[No. A057729. First Dist., Div. Four. Apr. 19, 1993.]

ABBE KANAREK PATTERSON et al., Plaintiffs and Respondents, v. ITT CONSUMER FINANCIAL CORPORATION et al., Defendants and Appellants.

---

COUNSEL

LeBoeuf, Lamb, Leiby & MacRae, John W. Cotton and Vincent J. Davitt for Defendants and Appellants.

Sturdevant & Sturdevant, Patricia Sturdevant, Sallyanne Campbell and Kim E. Card for Plaintiffs and Respondents.

---

OPINION

POCHÉ, Acting P. J.—Defendants, ITT Consumer Financial Corporation, Aetna Finance Company, ITT Lyndon Property Insurance Company, ITT Lyndon Life Insurance Company, and John M. Higgins (collectively ITT), appeal from an order denying their petition to compel arbitration and prohibiting them from confirming arbitration awards in the City and County of San Francisco. Plaintiffs Abbe Kanarek Patterson et al., are individuals who borrowed money from defendant finance companies and who, in connection with those loans, purchased insurance policies from defendant insurers.

In September 1991 plaintiffs filed a class action alleging ITT had violated the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.), engaged in unfair debt collection practices (Civ. Code, § 1788 et seq.), unlawfully made collateral sales a condition upon obtaining loans, breached the loan agreement with respect to insurance payments and refunds, engaged in false advertising, intentionally inflicted emotional distress, and committed fraud. A companion case containing many of the same allegations was filed on behalf of an individual plaintiff, John Lang, a few months later.

ITT petitioned for an order to compel arbitration under the following provision which was part of the loan agreement signed by each plaintiff:[1] "You and ITT financial services agree that, other than judicial foreclosures and cancellations regarding real estate security, any dispute, past, present, or future, between us or claim by either against the other . . . whether related to your loan, products you purchase from or through ITT Financial Services, or otherwise, shall be resolved by binding arbitration by the National Arbitration Forum, Minneapolis, Minnesota and judgment upon any award

---

[1]The Lang and Patterson cases were not consolidated but were heard together, apparently because of the common issue presented.

by the arbitrator may be entered in any court having jurisdiction. We agree that the transactions between us are in interstate commerce and this agreement shall be subject to 9 USC § 1-14, as amended."[2]

After a contested hearing the court denied defendant's petitions to compel arbitration, finding that the arbitration clauses were unconscionable and hence unenforceable. The court also ordered defendants not to seek confirmation in the City and County of San Francisco of any arbitration awards, but permitted defendants to pursue their claims in San Francisco small claims or superior court actions.

ITT appeals contending that the trial court erred when it found the arbitration agreements to be unconscionable. It also contends that the order prohibiting them from confirming arbitration awards against plaintiffs who were not parties to this action was improper.

*Discussion*

I. *Arbitration Clause*

A. *Standard of Review*

■ Unconscionability is ultimately a question of law. (*A & M Produce Co.* v. *FMC Corp.* (1982) 135 Cal.App.3d 473, 489 [186 Cal.Rptr. 114, 38 A.L.R.4th 1].) To the extent that there are conflicts in the evidence or in the factual inferences which may be drawn from the evidence a finding of unconscionability by the trial court will be upheld if it is supported by substantial evidence. (*Ibid.*) If, however, there is no evidence extrinsic to the contract or no conflict in the extrinsic evidence or the conflicting evidence is entirely written, a reviewing court is not bound by the finding of the trial court, but instead subjects the contract to independent review. (*Milazo* v. *Gulf Ins. Co.* (1990) 224 Cal.App.3d 1528, 1534 [274 Cal.Rptr. 632].) In this case what extrinsic evidence there was, was entirely written. Thus, even to the extent that the evidence may be in conflict, this court reviews the arbitration clause de novo.

B. *Unconscionability*

■ Two alternative analyses exist under California law for determining whether a contractual provision will be unenforceable because it is unconscionable. (*Perdue* v. *Crocker National Bank* (1985) 38 Cal.3d 913, 925, fn.

---

[2]A slightly different version was signed by plaintiff Lang which applies arbitration to "any dispute exceeding $3,000 (including class claims which in the aggregate exceed $3,000)."

9 [216 Cal.Rptr. 345, 702 P.2d 503] ["Both [analytical] pathways should lead to the same result."].) The first model set out in *Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807 [171 Cal.Rptr. 604, 623 P.2d 165] asks initially whether the contract is one of adhesion. (*Id.* at p. 819.) Since a contract of adhesion is still fully enforceable, the inquiry then turns to whether enforcement should be denied. First, enforcement will be denied if the contract or provision falls outside the reasonable expectations of the weaker party. (*Id.* at p. 820.) Second, enforcement will be denied even if it does fall within the reasonable expectations of the parties, but it is unduly oppressive or unconscionable. (*Ibid.*)

The alternative analytical model was set out in *A & M Produce Co.* v. *FMC Corp.*, *supra*, 135 Cal.App.3d 473. It sought to define what rendered a contract or a contractual provision unconscionable and hence unenforceable under Civil Code section 1670.5. (135 Cal.App.3d at p. 485.) *A & M* concluded that unconscionability has a procedural and a substantive component. (*Id.* at p. 486.) The procedural component focuses on the factors of oppression and surprise. (*Ibid.*) Oppression results where there is no real negotiation of contract terms because of unequal bargaining power. (*Ibid.*) " 'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." (*Ibid.*) The substantive component of unconscionability looks to whether the contract allocates the risks of the bargain in an objectively unreasonable or unexpected manner. (*Id.* at p. 487.) To be unenforceable there must be both substantive and procedural unconscionability, though there may be an inverse relation between the two elements. (*Ibid.*)

 A contract of adhesion is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." (*Neal* v. *State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690, 694 [10 Cal.Rptr. 781].) The record before us indicates that plaintiffs are individuals of modest means, some self-employed or temporarily jobless, who borrowed relatively small amounts of money, often in response to advertising promising "guaranteed loans." The loan agreement which they signed included a preprinted form containing an arbitration clause either as the final paragraph on a page entitled "Agreement for Dispute Resolution" or at midpage on a sheet of text, but set apart by the use of boldface type. On both versions of the form the provision was clearly titled "Arbitration." None of the preprinted clauses had been modified in any manner, which suggests that they were nonnegotiable. Several of the borrowers stated that they believed they would not have been able to obtain a bank loan. In these circumstances we think it indisputable that the contract was one of adhesion.

ITT argues that arbitration has become such a common means of dispute resolution that it must be considered within the reasonable expectation of the borrowers. While arbitration per se may be within the reasonable expectation of most consumers, it is much more difficult to believe that arbitration in Minnesota would be within the reasonable expectation of California consumers. The arbitration clause says only that the dispute will be "resolved by binding arbitration by the National Arbitration Forum, Minneapolis, Minnesota."

At the time the agreement was signed the borrowers were not given a copy of the procedural rules of the National Arbitration Forum (NAF)—the rules were sent to the borrowers only once ITT had initiated a claim against them. Indeed, in her declaration NAF's director of arbitration asserted that "[i]t is not possible for the National Arbitration Forum to advise a claimant or respondent of the location of the Participatory Hearing before a claim is brought or a response entered . . . ." Thus, at the time the agreement was signed even a borrower who inquired about where any arbitration would be held could not have received a definite answer from NAF. Meanwhile the provision on its face suggests that Minnesota would be the locus for the arbitration.

The NAF rules do permit a participatory hearing and state that it "shall be held in the United States federal judicial district or division where the respondent to the initial claim signed the arbitration agreement, *unless the arbitration agreement designates or the parties agree to a different location.*" (Italics added.) As the trial court concluded, a reasonable reader of this language might believe that by signing an agreement to arbitrate with NAF in Minnesota he had in fact agreed to that location.

Under NAF procedures if a borrower responds to notice of a claim with a written denial of responsibility sent to Minnesota, the borrower is found to have conferred jurisdiction on NAF in Minnesota. The result will be an arbitration conducted without appearances by either side and based solely on the submitted documents. Arbitration based solely on documents does not entail payment of fees by the responding party.

In order to obtain a participatory hearing, however, the responding party must make a prompt demand for one and accompany it with prepayment of fees.[3] Prepayment of hearing fees can be waived for individuals, but only after filing an affidavit of indigency. However, the rule explaining the fee

---

[3]The NAF 1992 fee schedule calls for a filing fee on claims of up to $5,000 of 5 percent but not less than $98. Hearing fees for claims in that dollar range are $750 per three-hour session. Additional fees are charged for discovery, written findings and expedited hearings.

waiver process is, as the trial court aptly noted, "incomprehensible," since it requires compliance with rules concerning involuntary dismissals.

The likely effect of these procedures is to deny a borrower against whom a claim has been brought any opportunity to a hearing, much less a hearing held where the contract was signed, unless the borrower has considerable legal expertise or the money to hire a lawyer and/or prepay substantial hearing fees. The latter is especially unlikely given the small dollar amounts at issue. In a dispute over a loan of $2,000 it would scarcely make sense to spend a minimum of $850 just to obtain a participatory hearing. In short the procedure seems designed to discourage borrowers from responding at all. In the event that they do not respond, an award may be entered against them if the documents submitted by ITT support its claim.

While we cannot say that the notice of and implementation of NAF's rules and procedures deny the borrower a "fair opportunity to present his position," they come perilously close to doing so. (*Graham* v. *Scissor-Tail, Inc.*, *supra*, 28 Cal.3d 807, 826.) While NAF's rules and fees might be fairly applied to business entities or sophisticated investors and to claims for substantial dollar amounts, those same procedures become oppressive when applied to unsophisticated borrowers of limited means in disputes over small claims.

Analyzed in *A & M Produce* terms these arbitration procedures bear upon the substantive element of unconscionability. The contractual risk of a dispute resolution process which is weighted heavily against the borrower being able to obtain a hearing seems particularly unreasonable in light of the much greater bargaining power of ITT and its reluctance to disclose even the mechanics of NAF arbitration until it makes an arbitration claim. (*A & M Produce Co.* v. *FMC Corp.*, *supra*, 135 Cal.App.3d 473, 487.)

Moreover, there was evidence in the declarations of several plaintiffs that they had not read the arbitration provision nor had any ITT employee pointed it out to them at the time they signed the loan agreement. While failure to read the provision does not excuse compliance with it (*Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 710 [131 Cal.Rptr. 882, 552 P.2d 1178]), it does establish actual surprise the unfairness of which is reinforced by ITT's failure to call the arbitration clause to the attention of its borrowers. (*A & M Produce Co.* v. *FMC Corp.*, *supra*, 135 Cal.App.3d at p. 490.)

Thus, whether we analyze this arbitration clause as beyond the reasonable expectation of the borrower (in *Graham* v. *Scissor-Tail, Inc.* terms) or as

substantively and procedurally unconscionable (under *A & M Produce*'s analysis), the result is the same.

ITT argues that plaintiffs failed to prove the oppression factor of the procedural prong of unconscionability because plaintiffs did not demonstrate that they could obtain loans only from ITT. In support of its position ITT cites *Dean Witter Reynolds, Inc.* v. *Superior Court* (1989) 211 Cal.App.3d 758 [259 Cal.Rptr. 789]. In that case a concededly sophisticated investor challenged a $50 termination fee applied to individual retirement accounts (IRA's). The court held "that the 'oppression' factor of the procedural element of unconscionability may be defeated, if the complaining party has a meaningful choice of reasonably available alternative sources of supply from which to obtain the desired goods and services free of the terms claimed to be unconscionable." (*Id.* at p. 772.) In *Dean Witter* the "record establish[ed] without conflict that other financial institutions offered competing IRA's which lacked the challenged provision." (*Id.* at p. 771.) The court concluded that the investor had completely failed to prove the procedural prong of unconscionability—there was no oppression since other entities offered an IRA without a termination fee, and there was no surprise since the fee had been disclosed to a sophisticated individual who would have understood the disclosure. (*Id.* at pp. 771-772.)

Such is not the case here. These plaintiffs were individuals of modest resources who believed they would not have qualified for a conventional loan from a bank. Moreover, they were not purchasers of an IRA account, but applicants for a loan, many of whom were responding to advertisements from ITT for "guaranteed loans." There is nothing in this record to suggest that plaintiffs had a "meaningful choice of reasonably available alternative sources" of personal loans from lenders who would not require NAF arbitration.

We conclude that the arbitration provision in the loan agreement is unconscionable and thus unenforceable.

## II. *Order*

At the time the petition to compel arbitration was denied plaintiff had filed a complaint on behalf of a class of similarly situated consumers, but as yet no class had been certified. Meanwhile, ITT had pending in San Francisco Superior Court a number of petitions to confirm arbitration awards against potential members of the class. As the trial court stated, "ITT Consumer Financial Corporation has been filing its claims with the NAF in Minneapolis, MN, taking Defaults therefrom, based either upon borrowers' failures to

appear or failures to respond to the NAF notice, then enforcing the Arbitration Awards in the Law and Motion Department of this Court by having them confirmed into California judgments."

In response to this practice and at the urging of plaintiffs' counsel that the court take some measure to enforce its ruling as to all ITT borrowers, the court issued an order directing ITT to refrain from seeking to confirm NAF arbitration awards taken by default. The order does permit ITT to pursue delinquent borrowers in San Francisco courts; thus ITT can pursue in judicial actions new claims or NAF arbitrated but as-yet-unconfirmed claims.[4]

 ITT makes two arguments that the order is infirm. First, it contends plaintiffs had no standing to object to confirmation of arbitration awards against borrowers who were not named plaintiffs in this action. Second, it contends that the order is overbroad and unnecessary under California law.

The standing of the plaintiffs is not really the issue. ITT objects that the order prohibits it from reducing *any* NAF default arbitration awards to judgment, not just those it might obtain against the named plaintiffs against whom it was seeking to compel arbitration. ITT ignores the fact that the *Patterson* case is pled as a class action.

Once jurisdiction over a matter is conferred upon a trial court it has all means necessary to carry its jurisdiction into effect. (Code Civ. Proc., § 187; *People* v. *Gonzalez* (1990) 51 Cal.3d 1179, 1257 [275 Cal.Rptr. 729, 800 P.2d 1159].) In addition to this general grant of authority courts are also authorized to issue temporary restraining orders and/or preliminary injunctions in class actions even before the class has been certified. (Code Civ. Proc., § 527.) Obviously, in this instance the order which issued arose in the context of a motion to compel arbitration, but that procedural happenstance does not act to deprive the court of authority to issue an order effectuating its conclusion that the arbitration clause is unenforceable, especially where there is a class action pending which potentially includes all California ITT borrowers. The order which issued was tailored to protect ITT's collection rights, but at the same time to permit plaintiffs to seek class certification. We conclude it is not overbroad.

---

[4]The order further provides that a consumer against whom ITT files an action in a San Francisco court may not assert the arbitration agreement in order to obtain a stay of the court proceeding, nor may the consumer base a claim for wrongful conduct of ITT's failure to arbitrate. In recognition that a class was not yet certified, however, the court permitted any consumer not presently a plaintiff to ignore the order and assert the arbitration clause. In such an event the order directs that ITT shall not be penalized by having instituted a court action in compliance with the order.

## Disposition

The order denying ITT's petition to compel arbitration and prohibiting it from confirming NAF default awards in the City and County of San Francisco is affirmed.

Perley, J., and Reardon, J., concurred.

A petition for a rehearing was denied May 13, 1993, and appellants' petition for review by the Supreme Court was denied August 12, 1993.