United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 19, 2004**

Charles R. Fulbruge III
Clerk

REVISED MAY 4, 2004
**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

NO. 03-60356

_____

BANC ONE ACCEPTANCE CORP.,

Plaintiff-Appellant,

versus

EDITH HILL; DEBORAH BRAND,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
4:02-CV-66-PB
_____

Before JONES, EMILIO M. GARZA and BENAVIDES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

This appeal arises out of an automobile lease gone bad. In the fall of 2000, Edith Hill leased a 2000 Ford Explorer from the East Ford dealership located in Jackson, Mississippi. About one year later, Banc One Acceptance Corporation, the finance company, repossessed the Explorer, even though Hill's payments were current. Hill complained unsuccessfully and then filed suit in state court against East Ford and Banc One. Banc One responded

with an action in federal court seeking to enforce the arbitration clause in the lease documents. Hill, however, persuaded the district court that according to a recent Mississippi Supreme Court case interpreting identical contract language, the arbitration clause was unconscionable and thus unenforceable under state law. See East Ford, Inc. v. Taylor, 826 So. 2d 709, 717 (Miss. 2002). The district court denied Banc One's motion to compel arbitration and granted Hill's motion to dismiss. Banc One now appeals. We affirm.

## I. BACKGROUND

On August 14, 2000, Edith Hill signed an offer to lease and a motor vehicle lease agreement for a 2000 Ford Explorer from East Ford. In the offer to lease, an arbitration clause provided that

> any controversy, claim, action or inaction arising out of, or relating to, the transaction evidenced by the OFFER together with any resulting written agreements including . . . any . . . lease . . . shall be settled by arbitration administered by the American Arbitration Association.

Exempted from the arbitration clause are "claims by [East Ford] . . . that one or more events of default . . . has occurred on the part of [Hill] . . . [such claims] may be pursued in any court of competent jurisdiction."

Hill leased the Explorer to provide a car for her niece, Deborah Brand, but the parties dispute whether East Ford and its employees knew this. In any event, the lease agreement signed by

2

Hill authorized only members of her "immediate family" to use the automobile.  Hill's alleged violation of the lease terms led Banc One to repossess the Explorer despite Hill's being current in the payments.  This litigation followed.  Banc One now appeals the district court's denial of its motion to compel arbitration and the dismissal of its action.

## II.  DISCUSSION

This court reviews de novo a grant or denial of a petition to compel arbitration pursuant to § 4 of the Federal Arbitration Act (FAA).  Primerica Life Ins. Co. v. Brown, 304 F.3d 469, 471 (5th Cir. 2002); 9 U.S.C. § 4 (2000).  The de novo standard of review applies when a motion to compel is denied as part of a motion to dismiss.  Snap-On Tools Corp. v. Mason, 18 F.3d 1261, 1263-64 (5th Cir. 1994).

Two principal questions arise in this appeal.  The first is whether the district court had authority under the FAA to determine the enforceability of Hill's arbitration agreement with East Ford.  We find that it did.  The second is whether the enforceability issue is governed by state contract law or federal law.  The answer, in this case, is that state law applied.

### A.  District Court's Authority to Review Hill's Procedural Unconscionability Claim

A two-step inquiry governs whether parties should be compelled to arbitrate a dispute.  "First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court

3

finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims non-arbitrable." R.M. Perez & Assocs., Inc. v. Welch, 960 F.2d 534, 538 (5th Cir. 1992). In conducting this two-step inquiry, courts must not consider the merits of the underlying action. Snap-On Tools, 18 F.3d at 1267.

The first step of the process entails determining "whether there is a valid agreement to arbitrate between the parties; and . . . whether the dispute in question falls within the scope of that arbitration agreement." Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996). These questions are decided according to state law. Id. While there is a strong federal policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate. Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 214 (5th Cir. 2003). Nonetheless, once a court determines that an agreement to arbitrate exists, the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration. Primerica Life, 304 F.3d at 471 (citing Southland Corp. v. Keating, 465 U.S. 1, 10 (1984)).

The Supreme Court has held that under the FAA, the federal courts may only consider "issues relating to the making and performance of the agreement to arbitrate." See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967). In Prima Paint, the Court held that the "making" of an agreement to

4

arbitrate was not called into question by a general allegation that the entire contract was void because of fraudulent inducement.  See id.  Because the defense asserted in Prima Paint did not attack the "making" of the agreement to arbitrate itself, the Court ordered arbitration and noted that the FAA reflects an "unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts."  Id. at 404.

This court recently addressed the scope and application of the Prima Paint rule and held that where the "very existence of a contract" containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter.  See Will-Drill, 352 F.3d at 218.  In that case, the party resisting arbitration attacked the essential validity of the contract by arguing that the contract was not signed by all of the necessary parties.  Id. at 215.  This contention, if accurate, would mean that no contract ever existed, and by proxy, that no agreement to arbitrate was ever concluded.  The arbitrator consequently would have no authority to decide anything.  Id.

Will-Drill distinguished the far more common argument made by a party who does not challenge the existence of a contract, but rather attacks the enforceability of the agreement alleging that the contract is void ab initio or voidable.  Id. at 218. Such a scenario calls for application of the severability doctrine

5

contained in Prima Paint. Under this approach, "[o]nly if the arbitration clause is attacked on an independent basis can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator." Id. (emphasis added); accord Primerica Life, 304 F.3d at 472 (holding that "unless a defense relates specifically to the arbitration agreement, it must be submitted to the arbitrator as part of the underlying dispute"). In other words, where the existence of the contract is not in question, the court must examine whether the allegations made by the party resisting arbitration challenge the "making of the agreement to arbitrate itself" as opposed to "allegations regarding the contract as a whole." Dillard v. Merrill Lynch, 961 F.2d 1148, 1154 n.9 (5th Cir. 1992) (citing Prima Paint, 388 U.S. at 403-04) (internal quotation marks omitted). Only if the allegations concern solely the arbitration term and are not generally applicable to the agreement as a whole may the district court properly adjudicate the enforceability of the arbitration clause. See id. (holding that by "focus[ing] specifically on the arbitration provision as an adhesive term," the party resisting arbitration had met the threshold requirement to challenge the making of the arbitration agreement). Where a defense does not specifically relate to the arbitration agreement, however, it must be submitted to the arbitrator as part of the underlying dispute. See Primerica Life, 304 F.3d at 472 (holding that a claim that one of the parties lacked the capacity to contract must be submitted to

6

the arbitrator); Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) (noting that "the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability") (internal quotation marks and citations omitted).

Hill does not challenge the "very existence" of the contract. Indeed, her underlying state court action seeks to obtain damages for breach of contract, and she admits in her affidavit before the district court that she signed the offer to lease containing the arbitration clause. Instead, Hill asserts that the arbitration clause is "procedurally unconscionable," a claim fundamentally different from the position asserted by the party resisting arbitration in Will-Drill. Hill's argument falls within the Prima Paint separability doctrine, and the court must examine whether Hill's allegations attack the arbitration clause on an "independent basis," or constitute a "general attack" on the contract. Will-Drill, 352 F.3d at 218.

In her affidavit, which recites the circumstances under which she signed the offer to lease and lease agreement, and thus undergirds her procedural unconscionability claim, Hill states that she "never agreed nor intended to agree to arbitration" for two reasons. First, Hill "did not read the documents" that the salesman asked her to sign because the salesman did not ask her to read them, nor did he "tell [her] that [she] needed to read the documents." Hill further says she did not read the documents she signed because she trusted the salesman. Second, "no one asso-

7

ciated with East Ford ever told [her] that [she] was signing an arbitration agreement," or that she could object to the agreement, and no one explained the term "arbitration" to her. As this court has held, the general assertions that she did not read or understand the contractual documents or that East Ford did not explain the documents do not suffice to allege fraud in the making of the arbitration clause, but rather address the formation of the entire contract. R.M. Perez, 960 F.2d at 538-39. Hill's affidavit fails to undercut the arbitration clause.

Hill's pleadings, on the other hand, informed the district court that the validity of an "identical arbitration clause" was being considered by the Mississippi Supreme Court. The impetus for Hill's amended motion to dismiss was the court's ruling in Taylor, which found this "identical arbitration clause" procedurally unconscionable under Mississippi law. Taylor, 826 So. 2d at 717. In Dillard, we held that where a party alleges that an arbitration agreement is adhesive, "focus[ing] specifically on the arbitration provision as an adhesive term" allows the party resisting arbitration to meet the threshold requirements necessary to challenge the making of the arbitration agreement itself. Dillard, 961 F.2d at 1154. Similarly, Hill's line of attack, aimed at the arbitration clause alone and based on the Mississippi Supreme Court's analysis of an identical clause, is sufficiently independent of her general disagreement with the contract. On this basis, the district court had the authority and the responsibility

8

to adjudicate whether the arbitration agreement between Hill and Banc One was procedurally unconscionable.

## B. District Court's Application of Mississippi Law

Banc One contends that the district court erred in applying <u>Taylor</u> because the Mississippi Supreme Court's decision impermissibly discriminates against arbitration under the FAA.[1] But the validity of an arbitration provision is a question of state law, <u>see</u> <u>Webb</u>, 89 F.3d at 258, and this court recently reviewed under state law whether an arbitration clause was unconscionable. <u>Carter v. Countrywide Credit Indus., Inc.</u>, ___ F.3d ___, No. 03-10484, 2004 WL 414072 at *5 (5th Cir. March 5, 2004). In this action, the district court correctly applied the Mississippi Supreme Court's ruling in <u>Taylor</u>, which held that an identical arbitration clause was procedurally unconscionable under Mississippi law for a variety of reasons, including the relative position of the parties, the nature of the contract at issue, and the appearance and placement of the arbitration clause relative to the rest of the contract. <u>Taylor</u>, 826 So. 2d at 716-17.

Although <u>Carter</u> suffices to justify using state law here, we note that the purpose of the FAA is to ensure that arbitration agreements are not treated differently from other contract provisions under state law. <u>See</u> <u>Doctor's Assocs., Inc. v.</u>

---

[1] As noted above, this court reviews de novo the denial of a motion to compel in the context of a motion to dismiss. <u>See</u>, <u>e.g.</u>, <u>Snap-On Tools</u>, 18 F.3d at 1263-64.

Casarotto, 517 U.S. 681, 687 (1996).  The Supreme Court has consistently held that "generally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA]."  Id.; see also Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987).  At the same time, however, the Supreme Court has indicated that state courts cannot "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what we hold today the state legislature cannot."  Perry, 482 U.S. at 492. As such, while state courts may strike down arbitration clauses based upon generally applicable contract principles, they "may not . . . decide a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clauses."  Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 281 (1995).  That is to say, state courts may properly strike down arbitration clauses, but they may not treat arbitration clauses differently than other contract terms, because to do so would be to put arbitration clauses on "an unequal footing" in violation of the FAA.  See id. (internal quotation marks and citation omitted).

Banc One argues that Taylor impermissibly discriminates against arbitration agreements because the Mississippi Supreme Court set out its particular approach to unconscionability in the context of an arbitration dispute.  Casarotto, however, held that

10

state unconscionability law may, on occasion, invalidate arbitration clauses so long as the state's approach is not directed specifically at arbitration agreements but instead applies to contract provisions generally. Casarotto, 517 U.S. at 687. If we were to accept Banc One's argument, a state court would find it extremely difficult to craft a decision holding an arbitration provision unconscionable under state law because, by setting out a particular approach to unconscionability in the context of an arbitration case, the state court would be impermissibly discriminating against arbitration under the FAA. Such a result is too broad and does not comport with Perry, Casarotto, and Allied-Bruce.

In Taylor, the Mississippi Supreme Court used standard tools of unconscionability doctrine and applied a prior Mississippi decision outlining its general approach to procedural unconsciona-bility under Mississippi contract law. 826 So. 2d at 715-17 (applying the framework set out in Entergy Miss., Inc. v. Burdette Gin Co., 726 So. 2d 1202, 1207-08 (Miss. 1998)). As a result, its approach does not appear to be aimed specifically at arbitration clauses, but is simply a case-specific application of general Mississippi unconscionability law.[2]  See Russell v. Performance

---

[2]  Banc One identifies only a single Mississippi case for the proposition that the Mississippi courts apply a different rule of law to arbitration provisions than to other contractual provisions. In Newton County Bank v. Jones, 299 So. 2d 215 (Miss. 1974), the Mississippi Supreme Court upheld a contractual provision that was characterized by the dissent as being "in small print." See Jones, 299 So. 2d at 218, 220. Such authority, relying on a characterization made in dissent and decided nearly thirty years before Taylor,

11

<u>Toyota, Inc.</u>, 826 So. 2d 719, 725-27 (Miss. 2000) (holding an arbitration clause in an automobile purchase agreement to be neither procedurally nor substantially unconscionable and distinguishing <u>Taylor</u>).  Under these circumstances, we cannot presume that the Mississippi Supreme Court was attempting to discriminate against arbitration in <u>Taylor</u>.[3]

Banc One points to a Third Circuit case which appears to indicate that the federal law construing the FAA is authoritative in determining claims of procedural unconscionability.  <u>See</u> <u>Harris v. Green Tree Financial Corp.</u>, 183 F.3d 173, 182 (3rd Cir. 1999) (indicating that "the FAA and federal law construing the Act govern the result in this case, and this authority does not support the . . . claim of unconscionability").  However, in <u>Harris</u>, the Third Circuit only cites federal court decisions that apply <u>state</u> <u>law</u> in support of its holding regarding the procedural unconscionability argument.  <u>See</u> <u>id</u>.  In addition, this court regularly applies state law to determine whether arbitration clauses are procedurally

can hardly carry much weight in determining whether the <u>Taylor</u> court crafted a legal doctrine aimed specifically at discriminating against arbitration in violation of the FAA.  In addition, Banc One's argument presumes that the <u>Taylor</u> court held the arbitration clause at issue in that case unconscionable solely based on the font size of the clause.  However, a close reading of <u>Taylor</u> indicates that the court examined a variety of other factors in reaching its holding, including the relative position of the parties and their knowledge or lack thereof.  <u>See</u> <u>Taylor</u>, 826 So. 2d at 715-16.

[3]     It is important to note here that if the Mississippi courts were to limit the applicability of the procedural unconscionability approach outlined in <u>Taylor</u> to arbitration agreements only, or were repeatedly to apply a different approach to other contractual provisions, the issue of discrimination against arbitration under the FAA may come into play.  However, absent any compelling evidence of such an approach, and given that <u>Taylor</u> was decided relatively recently, we decline to find improper discrimination here.

12

unconscionable. See, e.g., Fleetwood Enters., Inc. v. Gaskamp, 280 F.3d 1069, 1077 (5th Cir. 2002) (citing four Texas cases in ruling on a procedural unconscionability claim); accord Webb, 89 F.3d at 259. We see no reason why Mississippi law should not apply here.

Under Mississippi law, authoritatively construed by the state supreme court, an arbitration agreement of exactly the type that was at issue in Taylor is procedurally unconscionable. While Banc One cites a panoply of federal cases that appear to dictate a different result on a wide range of issues, because the arbitration provision at issue here is identical to the one examined by the Taylor court, these federal cases cannot help Banc One avoid controlling Mississippi law. As a result, the district court correctly held that the arbitration provision was procedurally unconscionable and thus unenforceable under Mississippi law.[4]

### III. CONCLUSION

For the reasons discussed above, the judgment of the district court is **AFFIRMED**.

---

[4] Hill also argues that this court should consider the substantive unconscionability of the arbitration clause. Both Hill and Banc One agree that neither the district court nor the Taylor court clearly ruled on the question of substantive unconscionability. In addition, Hill cites no controlling authority for the proposition that the contract is substantively unconscionable under Mississippi law. Because we find the arbitration clause at issue here to be procedurally unconscionable under Mississippi law, we need not reach the question of substantive unconscionability.