Cynthia H. SPEETJENS, Cynthia H. Speetjens, Attorney, P.A., Thomas Roe Frazier, II, John Davidson, and Frazier Davidson, P.A., Plaintiffs,

v.

Janet LARSON, Defendant.

No. 3:05 CV 394 BN.

United States District Court,
S.D. Mississippi,
Jackson Division.

Nov. 8, 2005.

Grover Clark Monroe, II, DunbarMonroe, PLLC, Jackson, MS, Danny A. Drake, Mockbee, Hall & Drake, PA, Jackson, MS, for Cynthia H. Speetjens, T. Roe Frazer, John Davidson, Plaintiffs.

Mark H. Rosenthal—PHV, Law Offices of Mark H. Rosenthal, San Francisco, CA, for Janet Larson, Defendant.

## OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on the following Motions:

1. Plaintiffs' Motion for Preliminary Injunction, Permanent Injunctive Re-

lief and Order Compelling Arbitration; and

2. Defendant's Motion to Dismiss.

Having considered the Motions, Responses, Rebuttals and all attachments to each, as well as supporting and opposing authority, the Court finds as follows:

1. Plaintiffs' Motion for Preliminary Injunction, Permanent Injunctive Relief and Order Compelling Arbitration is well taken in part and not well taken in part and should be granted in part and denied in part;[1] and

2. Defendant's Motion to Dismiss is not well taken and should be denied as moot.

## I. Factual Background and Procedural History

This case arises out of a contractual relationship between Plaintiff Frazier Davidson, P.A. ("Frazier Davidson"), a Mississippi law firm composed of Plaintiffs Thomas Roe Frazier, II and John Davidson and one of its former associates, Plaintiff Cynthia Speetjens, and Defendant Janet Larson. In 2003, Larson believed her financial investor Michael Kimsey, also a California resident, had improperly advised her on how to invest her assets.[2] A mutual acquaintance of Larson and Frazier Davidson who was aware of Larson's need for an attorney arranged a teleconference between the two parties.[3] After the teleconference, Larson retained Cynthia Speetjens, an associate with Frazier Davidson, to represent Larson as well as two trusts that were established by Kimsey—the Janet E. Larson Irrevocable Trust and the Janet E. Larson Insurance Trust (collectively "the Trusts").[4]

Speetjens sent Larson a copy of a Frazier Davidson contingency fee agreement and Larson's brother, who is an attorney, reviewed the contract. On March 8, 2004, Larson signed and faxed the Attorneys' Contingent Fee and Cost Employment Agreement ("the Frazier Davidson Employment Agreement") to Speetjens. Exhibit "A" to the Complaint. Larson signed the Frazier Davidson Employment Agreement, but neither Speetjens nor any representative of Frazier Davidson signed it. The Trusts were never mentioned as clients or beneficiaries of the Frazier Davidson Employment Agreement.

Some time after Larson entered into the Frazier Davidson Employment Agreement, Speetjens left Frazier Davidson and started her own firm, Cynthia Speetjens, Attorney P.A. ("Speetjens Firm"). Larson allowed Speetjens to take the Kimsey matter to the new firm. On November 3, 2004, Larson entered into a second contingency fee agreement with the Speetjens Firm ("the Speetjens Employment Agreement"). Exhibit "A" to the Complaint.

---

1. Because Plaintiffs' Motion is essentially requesting two distinct forms of relief—an Order Compelling Arbitration and an Injunction—the Court will hereinafter treat Plaintiffs' Motion as two separate Motions.

2. Larson alleges that her claim against Kimsey was worth approximately $1 Million. Kimsey had advised Larson to purchase $10 million life insurance policies on two separate occasions. The premium for the first policy she purchased was $232,000 per year. The second policy, which she purchased after the first policy was surrendered, had an initial premium of approximately $250,000 with an approximately $100,000 yearly premium.

3. Larson alleges that Frazier Davidson was "seeking contingency fee cases" and that the teleconference was a "pitch" by the firm to represent her. *See* Defendant's Memorandum in Support of Her Motion to Dismiss Complaint and in Opposition to Plaintiffs' Motion to Compel Arbitration, p. 6.

4. Larson was trustee of the Irrevocable Trust and her daughter, Marnie Near, was trustee of the Insurance Trust.

The Speetjens Employment Agreement was also reviewed by Larson's brother before Larson signed it. The Speetjens Employment Agreement also failed to mention the Trusts.

Speetjens associated another Mississippi attorney, Jesse Harrington, to help with the matter. Harrington traveled to California and met with Larson in late 2004 about the case. Larson alleges that she was informed that a complaint would soon be filed in California state court against Kimsey. Although a draft of a complaint was e-mailed to Larson, the complaint was never filed. Larson believed that Speetjens and Harrington had failed to pursue Larson's claim against Kimsey, and Larson became frustrated with their inaction. After allegedly contacting the two attorneys on numerous occasions and "not get[ting] a straight answer," Larson decided to have a California attorney look into the matter.[5]

After assessing the situation, the California attorney and Larson's current counsel, Mark Rosenthal, opined that the statute of limitations had run or would soon run on her claim against Kimsey. On April 25, 2005, Larson fired Speetjens. Rosenthal then sent a letter to Speetjens on May 18, 2005, informing Speetjens of his findings and that Larson might pursue a legal malpractice claim. In June 2005, Frazier Davidson and Speetjens demanded arbitration pursuant to the arbitration clauses ("the Arbitration Agreements") in both the Frazier Davidson and Speetjens Employment Agreements. Exhibit "C" to the Complaint. Larson subsequently refused to arbitrate, arguing that the Arbitration Agreements were unenforceable. Other than references to the individual firms, the Arbitration Agreements in both the Frazier Davidson and Speetjens Employment Agreements are identical. The subject provisions state,

[a]ny and all disputes and/or controversies relating to FRAZER DAVIDSON, p.a.'s [CYNTHIA H. SPEETJENS, P.A.'S] or associated counsel's representation shall be resolved solely and exclusively by arbitration. The arbitration shall be conducted by a panel of three arbitrators. CLIENT will select one arbitrator who is a member of The Mississippi Bar and whose membership is active and in good standing. Our Law Firm will select an arbitrator who is a member of The Mississippi Bar and whose membership is active and in good standing. The two arbitrators will then select a third arbitrator who is a member of The Mississippi Bar and whose membership is active and in good standing. The arbitration shall be conducted in Hinds County, Mississippi. The powers and rulings of the arbitrators shall be exercised by a majority of their numbers. The rulings of the majority of arbitrators shall be binding on CLIENT and our Law Firm to the same extent that a jury verdict would be binding on CLIENT and our Law Firm. Thus, CLIENT and our Law Firm agree that the arbitrators rulings may be enforced and/or appealed in Hinds County circuit court and applicable appellate courts to the same extent that a Hinds County jury verdict can be enforced and/or appealed. CLIENT and Law Firm understand that by CLIENT signing this contingency fee employment agreement CLIENT and Law Firm are waiving their rights to a jury trial on disputes and/or controversies relating to fees and/or costs, and CLIENT and Law Firm agree to submit any and all disputes and/or controversies relating to fees and/ or costs payable hereunder,

5. Harrington passed away in February 2005.

including fees and/or costs involving associate counsel, to binding arbitration in the manner provided herein. CLIENT will be responsible for paying the fees and costs billed by independent counsel CLIENT may retain. Law Firm will be responsible for paying the fees and costs billed by independent counsel Law Firm may retain. All other fees and costs associated with the arbitration will be paid in the manner and by the party or parties directed by the majority of the arbitrators.

*See* Exhibit "A" to the Complaint.

On June 24, 2005, Plaintiffs filed this action against Larson requesting an order compelling arbitration pursuant to § 4 of the Federal Arbitration Act ("FAA"); 9 U.S.C. § 1, *et seq.* On June 30, 2005, Larson, in her individual capacity, and Larson and Near, as trustees of the Trusts, sued Plaintiffs for legal malpractice in California state court. *See* Exhibit "A" to Plaintiff's Motion for Preliminary Injunction, Permanent Injunctive Relief and Order Compelling Arbitration.

On July 19, 2005, Plaintiffs filed their Motion asking the Court to order arbitration and enjoin the California state court action. Defendant responded to Plaintiffs' Motion on August 16, 2005, and also moved for dismissal. Because the California state court suit has since been removed to the United States District Court for the Northern District of California, Plaintiffs in their Reply request a stay of the California suit pending the outcome of this action. *See* Plaintiffs' Reply Brief, p. 11.

## II. Analysis—Motion to Compel Arbitration

Plaintiffs contend that because they have demanded arbitration and Defendant has refused, the Court should now compel arbitration pursuant to § 4 of the FAA. Defendant counters that the Arbitration Agreements are not enforceable for sever-

al reasons. First, Defendant avers that California statutory law renders the entire Employment Agreements unenforceable. Second, Defendant argues that the Arbitration Agreements are unconscionable because Defendant would be required to arbitrate in Mississippi, discovery would be limited, and the arbitrators would all be Mississippi attorneys. Third, Defendant claims the Arbitration Agreements promise a false right to an appeal. Finally, Defendant argues that her malpractice claim is not within the scope of the Arbitration Agreements.

Generally a two-step inquiry applies to actions to compel arbitration under the FAA. *Webb v. Investacorp, Inc.,* 89 F.3d 252, 257 (5th Cir.1996).

The first step is to determine whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. When deciding whether the parties agreed to arbitrate the dispute in question, courts generally ... should apply ordinary state-law principles that govern the formation of contracts. In applying state law, however, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration. The second step is to determine whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.

*Id.* at 257–58 (internal quotation marks and citations omitted). Defendant has not asserted that there are legal constraints external to the Employment Agreements that would prevent arbitration. Thus, the

Court's analysis will focus exclusively on whether the parties agreed to arbitrate this type of dispute in light of the two considerations outlined in *Webb*.

## II.A. Whether There is a Valid Agreement to Arbitrate

■ In deciding whether the parties agreed to arbitrate, the Court must first determine whether there is a valid agreement. *Id.* at 258. The Court must look exclusively to state law in making the validity determination. *Banc One Acceptance Corp. v. Hill,* 367 F.3d 426, 429 (5th Cir.2004). Although there is a strong federal policy favoring arbitration under the FAA, that policy should not be considered when evaluating the validity of an arbitration agreement. *Id.*

■ Because state law is determinative, the Court must decide whether Mississippi or California law is the controlling state law in this action. Federal courts, sitting in diversity, must apply the choice of law rules of the state in which that court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Mississippi has adopted the Restatement (Second) of Conflicts of Law approach. *Mitchell v. Craft,* 211 So.2d 509, 510 (Miss.1968). Section 188 of the Restatement (Second), the provision that pertains to contract disputes, enumerates five factors that a court must consider in determining which state "has the most significant relationship to the transaction and the parties." Those factors include:

a. the place of contracting,
b. the place of negotiation of the contract,
c. the place of performance,
d. the location of the subject matter of the contract, and
e. the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflicts of Law, § 188(b).

■ In the case *sub judice,* the place of contract, the place of negotiation, and the domicile of the parties are neutral factors. However, the place of performance and the location of the subject matter of the contract are factors that clearly point to California as the state with the most significant relationship. The Employment Agreements called for Plaintiffs to represent Defendant in a dispute with a California resident. Any potential lawsuit against Kimsey would have been filed in a California court; therefore, California would have been the place of the subject matter of the contract. Likewise, the parties contemplated performance of the contract in California. If a lawsuit had been filed, all formal legal proceedings would have taken place in California. It is also likely that all informal meetings between Plaintiffs and Defendant or Defendant and Kimsey would have occurred in California.

Accordingly, the Court finds that California has the most significant relationship to the transaction and parties; therefore, the Court will apply California law in deciding whether the Arbitration Agreements are enforceable.

## II.A.1. Whether California Statutes Render the Employment Agreements, as a Whole, Unenforceable

Defendant argues that Plaintiffs' failure to comply with various provisions of Cal. Bus. & Prof.Code § 6147 renders the Employment Agreements, as a whole, unenforceable. Specifically, Defendant asserts that the Frazier Davidson Employment Agreement violates § 6147 because it was not signed and that both Employment Agreements violate the statute because they do not state that fees are negotiable. Defendant further contends that because of these alleged deficiencies, the Employ-

ment Agreements in their entirety are voidable pursuant to the statute.

■ However, as Plaintiffs correctly point out, this is an issue for an arbitrator to decide. Defendant is attacking the enforceability of the Employment Agreements as a whole, not specifically the arbitration provisions within the Employment Agreements. As the United States Court of Appeals for the Fifth Circuit has held, "[o]nly if the arbitration clause is attacked *on an independent basis* can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator." *Hill,* 367 F.3d at 430 (citation omitted). Because Defendant argues that the Employment Agreements in their entirety are voidable, the Court does not have the authority to consider the merits of this argument.[6]

### II.A.2. Whether the Arbitration Agreements are Unconscionable

■ Defendant next asserts that because she will be required to arbitrate in Mississippi the Arbitration Agreements are unconscionable. Under California law, unconscionability has a procedural and substantive aspect, both of which are required to find that an agreement is unenforceable. *Little v. Auto Stiegler, Inc.,* 29 Cal.4th 1064, 130 Cal.Rptr.2d 892, 63 P.3d 979, 983 (2003). The procedural aspect focuses on the factors of oppression and surprise. *Id.* Procedurally unconscionable contracts "generally take the form a contract of adhesion." *Id.* The substantive aspect focuses on whether the contract is "unfairly one-sided." *Id.*

■ Defendant contends that the Arbitration Agreements are unconscionable for three reasons. First, Defendant argues that requiring her to arbitrate in Mississippi would be unfair and unreasonable considering Mississippi has no connection with the services rendered under the Employment Agreements other than it is the Plaintiffs' home state. Also, Defendant claims that between the two parties Plaintiffs had the superior bargaining power. Second, Defendant believes the Arbitration Agreements are unconscionable because Mississippi attorneys will serve as arbitrators. Third, the fact discovery would be limited by arbitration renders the provisions unconscionable.

The Court is unpersuaded by Defendant's assertions of unconscionability. Although Defendant claims that Plaintiffs had superior bargaining power, the evidence before the Court does not support that contention. In her Response to Plaintiffs' Motion, Defendant states that Plaintiffs were "seeking" cases and that Plaintiffs "pitch[ed]" a proposal to represent her. Parties who are "seeking" business and are having to "pitch" themselves to a prospective client generally do not have a "take it or leave it" mentality. Moreover, Defendant does not allege that she was unable to negotiate the terms of the Employment Agreements or that she even mentioned her opposition to any aspect of the Arbitration Agreements. In fact, Defendant's brother, who is an attorney, reviewed the Arbitration Agreements on Defendant's behalf and he apparently did not voice any concerns with the Mississippi arbitration forum or Mississippi attorneys serving as arbitrators. Further, because she had independent counsel review the Employment Agreements, Defendant

---

**6.** Defendant cites *Hill* and *Will–Drill Res. v. Samson Res. Co.,* 352 F.3d 211, 218 (5th Cir. 2003), for the proposition that a district court, and not an arbitrator, should decide whether the contract ever existed. *See* Defendant's Reply Memorandum, p.2. However, Defendant is not arguing that the Employment Agreements never existed, but that they are now voidable because they violate § 6147.

should not be surprised by the terms of the arbitration.

In support of her assertion regarding the forum selection clause, Defendant cites *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal.App.4th 1659, 18 Cal.Rptr.2d 563 (Cal. Ct.App.1993) and *Bolter v. Superior Court*, 87 Cal.App.4th 900, 104 Cal.Rptr.2d 888 (Cal.Ct.App.2001) as proof that it is patently unconscionable to make a California resident arbitrate in a foreign forum where the services contemplated in a contract were to be performed in California. But the facts of those cases are clearly distinguishable to this case. First, The *Patterson* and *Bolter* Courts did not rely exclusively on the fact that a California resident was being forced to arbitrate in a foreign state. The courts in *Patterson* and *Bolter* consider numerous other circumstances that are not present in this matter. For example, in both *Patterson* and *Bolter*, the parties rejecting arbitration had "limited financial means." *Bolter*, 87 Cal. App.4th at 907, 104 Cal.Rptr.2d 888; *Patterson*, 14 Cal.App.4th at 1664, 18 Cal. Rptr.2d 563. Defendant's financial status appears to be far from "limited." Unlike the parties in *Bolter*, it does not appear that Defendant lacks the means or the time to travel to Mississippi to arbitrate. The fact that Mississippi is not the most convenient forum for Defendant does not make the Arbitration Agreements unconscionable.

Further, the court in *Patterson*, in deciding that loan agreements were contracts of adhesion, relied on the fact that the parties believed they had no power to negotiate because they could not receive a loan elsewhere. *Patterson*, 14 Cal.App.4th at 1664, 18 Cal.Rptr.2d 563. However, as we previously mentioned, it appears Plaintiffs were pursuing Defendant just as much as Defendant was pursuing Plaintiffs. Defendant has not alleged that she had no other option for legal services other than Plaintiffs.

■■■ Defendant's contention that arbitration is unconscionable because of limited discovery is likewise without merit. "Limited discovery rights are the hallmark of arbitration.... Discovery is *not* a right in arbitration as it is in judicial proceedings." *Coast Plaza Doctors Hosp. v. Blue Cross of Cal.*, 83 Cal.App.4th 677, 689–90, 99 Cal.Rptr.2d 809 (Cal.Ct.App.2000). Defendant's main contention is that her "case within a case" will be difficult to establish because the necessary witnesses will not be subject to subpoena power. However, the inability to subpoena witnesses will affect Plaintiffs just as much as it will affect Defendant. Moreover, Defendant can likely prove the merits of her underlying case by means other than live witnesses. Therefore, the Court concludes that the Arbitration Agreements are not unconscionable.

**II.A.3. Whether the Arbitration Agreements are Unenforceable Because of the Expanded Appeal Rights in the Provisions**

Defendant next argues that the Arbitration Agreements should be deemed unenforceable because they are illusory. The Arbitration Agreements provide for an appeal of the arbitrators' decision "to the same extent that a Hinds County jury verdict can be enforced and/or appealed." Exhibit "A" to the Complaint. Defendant contends that this statement is illusory because under Miss.Code Ann. § 11–15–23 parties adversely affected by an arbitration decision do not enjoy the same appeal rights as an appeal of a jury verdict. Defendant further asserts that parties cannot contractually expand their right to appeal an arbitration decision under Mississippi law.

 The Supreme Court of Mississippi has yet to specifically address the issue of private parties contractually expanding the right to appeal an arbitration decision.[7] Nonetheless, the Fifth Circuit has held that "when, as here, the parties agree contractually to subject an arbitration award to expand judicial review, federal arbitration policy demands that the court conduct its review according to the terms of the arbitration contract." *Gateway Techs., Inc. v. MCI Telecomms. Corp.,* 64 F.3d 993, 997 (5th Cir.1995) (citing *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). Because the FAA would be the controlling law of any arbitration in the case at bar, Mississippi courts would be bound to apply federal substantive law in deciding whether appeal rights can be altered by contracting parties. *See Moses Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Court believes that the Mississippi Supreme Court, if faced with this issue, would be persuaded by the holding in *Gateway* and allow parties to contractually expand the right to appeal an arbitration award. Accordingly, the Court finds that the Arbitration Agreements are not unenforceable because of the enlarged appeal rights agreed to by the parties.

## II.B. Whether a Malpractice Claim is Within the Scope of the Arbitration Agreements

Defendant finally argues that arbitration is inappropriate because the Arbitration Agreements do not contemplate a malpractice claim. The Arbitration Agreements state from the outset that "[a]ny and all disputes and/or controversies relating to [Plaintiffs'] or associated counsel's representation shall be resolved exclusively by arbitration." Despite this language, Defendant contends that the Arbitration Agreements are ambiguous because they fail to explicitly state that malpractice disputes are subject to arbitration. Further, because fee disputes are specifically mentioned in the Arbitration Agreements and malpractice claims are not, Defendant argues that malpractice claims are therefore excluded.

 The issue of arbitrability is governed by federal law, not state law. *Moses Cone,* 460 U.S. at 24, 103 S.Ct. 927. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, [including] whether the problem at hand is the construction of the contract language." *Id.* at 24–25, 103 S.Ct. 927. "Unless it can be said with positive assurances that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue," arbitration should not be denied. *Wick v. Atlantic Marine, Inc.,* 605 F.2d 166, 168 (5th Cir.1979).

 Although the Arbitration Agreements in this case do not explicitly state that a malpractice claim is an arbitrable issue, the broad language of "any and all disputes and/or controversies" encompasses malpractice claims. Moreover, the fact fee disputes are expressly mentioned in the Arbitration Agreements does not mean that potential disputes or controversies that are not specifically discussed are not covered by the broad language of the Arbitration Agreements. Even assuming an ambiguity could be read into the Arbitra-

7. Defendant cites *Hutto v. Jordan,* 36 So.2d 809, 810 (Miss.1948) in claiming that private parties cannot expand appeal rights in Mississippi. But, the court in *Hutto* was faced with the issue of whether *the courts* could expand arbitration appeal rights. The *Hutto* court did not contemplate a *contractual* expansion of grounds for appeal.

tion Agreements, Defendant has not proven with positive assurances that the Arbitration Agreements cannot be interpreted as encompassing malpractice claims. In light of the strong policy favoring arbitration, the Court finds that a malpractice claim is an arbitrable issue under the Arbitration Agreements.

Accordingly, the Court finds that the parties agreed to arbitrate Defendant's malpractice claim. Because Plaintiffs have rightfully demanded arbitration and Defendant has refused, their Motion is well taken and an Order Compelling Arbitration is warranted.

## II.C. Who is Ordered to Arbitrate

■ The Court must now decide who will be subject to its Order Compelling Arbitration. Plaintiffs originally ask that Larson and the Trusts be compelled to arbitrate their claims. Plaintiff's Motion for Preliminary Injunction, Permanent Injunctive Relief and Order Compelling Arbitration, p.1. However, in their Reply Brief, Plaintiffs apparently concede that Larson, in her individual capacity, is the only interested party who can be compelled to arbitrate considering Larson is the only Defendant named in this action. *See* Plaintiff's Reply Memorandum, fn. 2. Accordingly, Defendant Janet Larson, in her individual capacity, is the only party compelled to arbitrate pursuant to this Opinion and Order.[8]

## III. Analysis—Motion for Injunctive Relief

■ Plaintiffs originally move this Court to enjoin Larson and the Trusts from proceeding with the California state court suit. That action has since been removed, therefore, Plaintiffs now ask this Court to stay the California action pending before the United States District Court for the Northern District of California. A federal court has the power, under appropriate circumstances, to stay an action before a sister federal court. *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir.1985). Generally, "the court in which an action is first filed is the appropriate court to determine whether subsequently filed case involving substantially similar issues should proceed." *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir.1997).

Defendant does not dispute that this Court has the authority to stay the California action as to her individual claims against Plaintiffs. However, Defendant contends that this Court does not have jurisdiction to enjoin the Trusts from proceeding in the California action because the Trusts are not parties to this action. Plaintiffs on the other hand argue that the Trusts can be enjoined by this Court. Citing *Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir.2004), Plaintiffs argue that the Trusts are amenable to this Court's jurisdiction under a theory of equitable estoppel. In *Bailey*, the Fifth Circuit allowed an arbitration agreement to be enforced against a non-signatory. *Id.* Because the non-signatory was benefitting from the contract that contained the arbitration agreement, the court in *Bailey* held that the non-signatory was equitably estopped from avoiding arbitration. Plaintiffs argue by analogy that even though the Trusts are non-signatories to the Employment Agreements, they are attempting to reap the benefits of the Employment Agreements in the California action. Thus, just as the non-signatories

---

8. The Court notes that the Trusts were never mentioned in the Employment Agreements. However, whether the Trusts are parties to the Employment Agreements is not a question squarely before the Court in this action; therefore, the Court will not adjudicate this issue.

were forced to arbitrate in *Bailey* for benefitting from the contract, Plaintiffs contend that the Trusts should now be enjoined from proceeding in the California action because they rely on the Employment Agreements.

▋ Although *Bailey* is analogous to this case, there is one glaring dissimilarity—the non-signatory in *Bailey* was a named defendant in the action before the *Bailey* court. Pursuant to Rule 65 of the Federal Rules of Civil Procedure, this Court does not have the authority to enjoin one who is not a party to the action. Moreover, as the Court discussed *supra*, Plaintiffs seem to concede that Larson, as the only named Defendant, is the only party subject to the Order Compelling Arbitration. If the Trusts are not parties to the arbitration proceedings, then the Court cannot forbid them from pursuing their claims against Plaintiffs in the California Action. Accordingly, the Court finds that only the litigation of Larson's individual capacity claims against Plaintiff in the California federal court action should be stayed.[9]

### IV. Analysis—Defendant's Motion to Dismiss

Because this Court grants Plaintiffs' Motion for Order Compelling Arbitration, Defendant's Motion to Dismiss is now moot. Accordingly, the Court finds that Defendant's Motion to Dismiss is not well taken and should be denied as moot.

### V. Conclusion

Based on the holdings presented above:

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Order Compelling Arbitration [docket entry no. 5] is well taken in part and not well taken in part and should be granted in part and denied in part. Plaintiffs' Motion is well taken in that Defendant Janet Larson is hereby ordered to submit to arbitration all of her individual capacity claims against Plaintiffs in accordance with the terms of the Arbitration Agreements executed by the parties. Plaintiffs Motion is not well taken in that the Janet E. Larson Irrevocable Trust and the Janet E. Larson Insurance Trust are not subject to this Order.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Injunctive Relief [docket entry no. 5] is well taken in part and not well taken in part and is hereby granted in part and denied in part. Plaintiffs' Motion is granted in that all proceedings relating to Defendant Janet Larson, in her individual capacity, in the case of *Janet E. Larson, Individually, and as Trustee of the Janet E. Larson Revocable Trust, Marnie E. Near, as Trustee of the Janet E. Larson Insurance Trust v. Cynthia H. Speetjens, Frazier Davidson, P.A., T. Roe Frazier II, John Davidson and John Does 1–100*, pending before the United States District Court of the Northern District of California, are hereby stayed pending the arbitration of Larson's claims. Plaintiffs' Motion is not well taken in that all other claims in the above referenced California action are not affected by this Order.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss [docket entry no. 8] is not well taken and is hereby denied as moot.

IT IS FURTHER ORDERED that a Final Judgment will be entered this day setting forth the relief granted in this Opinion and Order. However, either party may move to reopen this case if further judicial intervention is necessary to en-

---

9. This stay is only applicable to Larson's individual capacity claims. It does not enjoin the prosecution of all other claims in the California action.

force the rulings of this Court, or to enforce the rulings of the arbitrator.