Filed 1/2/15  Guzman v. Top Finance CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JOSE GUZMAN, | B252068 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC497748) |
| v. | |
| TOP FINANCE CO. et al., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Kenneth R. Freeman, Judge.  Reversed.

Foell & Elder, and William N. Elder Jr. for Defendant and Appellant.

Law Offices of Robert B. Mobasseri, Robert B. Mobasseri and Amy L. Hajduk for Plaintiff and Respondent.

_____

Top Finance Company, Inc. appeals from the trial court's denial of its motion to compel arbitration.  Because we find the contract was not unconscionable, we reverse.

**FACTS**

On December 19, 2012, Jose Guzman filed a complaint, alleging fraud and the violation of various consumer protection laws in connection with his purchase of a 2005 Volkswagen Toureg from 605 Auto.  Guzman alleged he saw the car advertised as a certified pre-owned car for $14,995 with 12.99 percent APR financing.  When Guzman and his wife went to see the car, they were informed they did not qualify for the advertised price and finance rate due to their poor credit.  They negotiated a sales price of $15,995 with an APR of 23.99 percent and a $3,000 down payment.  The Guzmans signed a retail installment sales contract, which contained an arbitration clause.  Soon after their purchase, the Guzmans began to experience difficulty with the car.  The middle rear seatbelt was not functional and various warning lights became illuminated. Guzman's wife experienced trouble with the brakes and sudden acceleration while driving on the freeway.  On a separate occasion, she crashed into a neighbor's gate when the brakes failed.  Guzman further alleged the car did not comply with California's smog and safety pre-sale requirements.  Guzman attempted to have the car repaired multiple times under the 30 day warranty with no success.

The complaint alleged individual claims as well as class claims on behalf of: 1) persons who purchased a certified pre-owned vehicle from 605 Auto without receiving a completed inspection report indicating all the components inspected; 2) persons who purchased a vehicle from 605 Auto who paid a price higher than that advertised; 3) persons who purchased a vehicle from 605 Auto who received a warranty different from that advertised.  605 Auto assigned the sales contract to Top Finance on December 19, 2011.  Thus, the complaint was alleged against 605 Auto Sales, Top Finance Co., Travelers Casualty and Surety Company of America, and the three individuals involved in selling the car to the Guzmans.

Top Finance filed a petition to compel arbitration on July 26, 2013. 605 Auto and the individually named defendants joined in Top Finance's petition to compel. Travelers opposed arbitration on the ground it was not a party to the sales contract. It alleged its sole involvement in the transaction arose from issuing a surety bond for $50,000 on behalf of 605 Auto Sales. After extensive briefing and oral argument, the trial court denied Top Finance's petition. The trial court found the arbitration agreement was procedurally unconscionable because the provision was presented on a "take it or leave it" basis with no opportunity for Guzman to negotiate the provision; Guzman had no meaningful choice. The trial court also found the fee arrangement in the arbitration provision to be substantively unconscionable because no fee waiver was allowed and fees were reimbursed at the arbitrator's discretion. Additionally, there was no provision requiring a written decision from the arbitrator or any reference to the rules applicable to the arbitration, including discovery rights. The trial court also found problematic the provision relating to an appeal to a three judge panel because there was no indication that was even allowed by the arbitration association. It also found inadequate mutuality because the arbitration provision allowed Top Finance to retain its rights to self-help remedies, including repossession, while buyers were forced to surrender their rights to recovery through the courts. Top Finance timely appealed.

## DISCUSSION

On appeal, Top Finance challenges the trial court's findings regarding the enforceability of the arbitration clause. Top Finance contends the trial court took an overly hostile view of arbitration agreements by applying an "entirely different and improperly stringent test to find arbitration agreements unconscionable which is not applied to other contracts." We disagree. The trial court applied the correct test to determine unconscionability. However, we conclude the contract is not sufficiently substantively unconscionable to render it unenforceable. Thus, we reverse the trial court's denial of the motion to compel arbitration.

3

## I. The Arbitration Clause

The sales contract is printed on a single sheet of paper[1] with text on both sides of the page. The buyer signs in eight places on the front page. Above the last signature line is this statement in all capital letters and in bold-faced type: "You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of this contract, including the arbitration clause on the reverse side, before signing below. You confirm that you received a completely filled-in copy when you signed it." The font size in the box is not noticeably bigger than the text surrounding it, most of which is also in bold and some of which is italicized. The back page of the contract is also dense with text. The buyer is not required to sign the back page. It contains a number of standard contract terms, such as provisions relating to late payment, seller's right to cancel, warranties, finance charges and payments, and claims procedures. Some of these provisions are outlined by a box, including the arbitration clause, which is located at the bottom of the page. It reads:

---

[1] The contract is form no. 553-CA-ARB (Rev. 1/10), printed by the Reynolds and Reynolds Company, and is apparently commonly used by car dealers. It is described in other decisions involving car dealers and manufacturers to be approximately 26 inches long. Numerous opinions address the enforceability of the arbitration clause found in form no. 553-CA-ARB. These cases are currently before the California Supreme Court and include: *Vargas v. SAI Monrovia B., Inc.* (2013) 216 Cal.App.4th 1269, review granted Aug. 21, 2013, No. S212033; *Vasquez v. Greene Motors, Inc.* (2013) 214 Cal.App.4th 1172, review granted June 26, 2013, No. S210439; *Natalini v. Import Motors, Inc.* (2013) 213 Cal.App.4th 587, review granted May 1, 2013, No. S209324; *Flores v. West Covina Auto Group, LLC* (2013) 212 Cal.App.4th 895, review granted Aug. 27, 2014, No. S208716; *Goodridge v. KDF Automotive Group, Inc.* (2012) 209 Cal.App.4th 325, review granted December 19, 2012, No. S206153. The California Supreme Court has suspended briefing on each of these cases pending a decision in *Sanchez v. Valencia Holding Co., LLC* (2011) 201 Cal.App.4th 74, review granted March 21, 2012, No. S199119.

"**ARBITRATION CLAUSE**

"**PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS**

"1.     EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.

"2.     IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

"3.     DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

"Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.  If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute.  Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action.  You expressly waive any right you may have to arbitrate a class action.  You may choose one of the following arbitration organizations and its applicable rules:  the National Arbitration Forum, Box

5

50191, Minneapolis, MN 55405-0191 (www.arbforum.com), the American Arbitration Association, 335 Madison Ave, Floor 10, New York, NY 10017-4605 (www.adr.org), or any other organization that you may choose subject to our approval. You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

"Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which you reside unless the Creditor-Seller is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

"You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within the court's jurisdiction, unless such action is transferred, removed or appealed in a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable."

## II.    The Law Regarding Enforceability of Arbitration Agreements

Both federal and California law express a strong public policy preference for arbitration. (*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.* (1983) 460 U.S. 1, 24-25; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) Thus, any doubt regarding the enforceability of an arbitration agreement is generally resolved in favor of arbitration. (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 686.) However, standard contract defenses still apply to invalidate an arbitration agreement. (*AT&T Mobility LLC v. Concepcion* (2011) 131 S.Ct. 1740, 1746 (*Concepcion*).) The FAA makes clear that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) California Code of Civil Procedure, section 1281 similarly provides: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Accordingly, unconscionability remains a valid defense to a petition to compel arbitration, along with other contract defenses such as fraud, mistake, or duress. (*Concepcion, supra,* 131 S.Ct. at p. 1746.)

7

Top Finance acknowledges that an arbitration clause may be unenforceable under the FAA if it is found to be unconscionable.

The unconscionability doctrine seeks to invalidate contracts which are "unreasonably favorable to the more powerful party" (8 Williston on Contracts (4th ed. 2010) § 18:10, p. 91). To that end, contracts, particularly contracts of adhesion, may not impose terms that are "overly harsh," "unduly oppressive, " "so one-sided as to 'shock the conscience,'" or "unfairly one-sided." (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1145, citations omitted.) A court applying the unconscionability doctrine must determine whether both procedural and substantive unconscionability exist in the agreement. These elements are applied on a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114.)

"Unconscionability is ultimately a question of law, which we review de novo when no meaningful factual disputes exist as to the evidence. [Citation.] We review the court's resolution of disputed facts for substantial evidence. [Citation.] When the trial court makes no express findings, we infer that it made every implied factual finding necessary to support its order and review those implied findings for substantial evidence. [Citation.]" (*Chin v. Advanced Fresh Concepts Franchise Corp.* (2011) 194 Cal.App.4th 704, 708 (*Chin*).) " '[W]here an unconscionability determination "is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence." . . . [Citations.]' " (*Ontiveros v. DHL Express (USA), Inc*. (2008) 164 Cal.App.4th 494, 502.)

### III.    Procedural Unconscionability

"The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55

8

Cal.4th 223, 246 (*Pinnacle*).) " ' "Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form." ' " (*Id.* at p. 247.) Even in adhesion contracts, courts will enforce provisions that are conspicuous, plain, and clear, and that do not "operate to defeat the reasonable expectations of the parties." (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 710.)

Here, the trial court found that Guzman was presented with a take-it-or-leave-it proposition and lacked any meaningful choice, fulfilling the oppression prong of procedural unconscionability. It further found the arbitration agreement was written in small font on the back of the agreement and at the very end of the contract, which it determined were characteristics indicative of surprise.

As a preliminary matter, we note the trial court failed to cite to any evidence in the record to support a finding of oppression, appearing to rely only on the allegations in the complaint and on the contract. Allegations contained in an unverified complaint are not evidence. (See Code Civ. Proc., § 128.7, subd. (b)(3).) While the sales contract is pre-printed and standardized, that, by itself, does not prove Guzman was presented with a take-it-or-leave-it contract. "To describe a contract as adhesive in character is not to indicate its legal effect. It is, rather, 'the beginning and not the end of the analysis insofar as enforceability of its terms is concerned.' [Citation.] Thus, a contract of adhesion is fully enforceable according to its terms [citations] unless certain other factors are present which, under established legal rules – legislative or judicial – operate to render it otherwise." (*Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 819-820, fns. omitted; see also *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1470 [use of nonnegotiable contract, standing alone, insufficient to support a finding of procedural unconscionability].)

The record does not include a declaration or other evidence to establish Guzman lacked any meaningful choice. The only declarations contained in the record are ones by counsel for Top Finance and its custodian of records. Further, Top Finance opted not to include the reporter's transcript in this record and thus, we are unable to determine if any

9

evidence was presented at the hearing. It, however, is Guzman's burden to prove any defense to enforcement of the arbitration provision. (*Chin, supra,* 194 Cal.App.4th at p. 708.) Guzman has not identified any evidence of oppression other than by citation to the terms of the contract.

Even if we accept the trial court's finding that the arbitration clause was oppressive, though, we find the arbitration provision lacking in surprise. Arbitration is and has been a common means of dispute resolution and an arbitration provision in a consumer contract cannot fairly be said to defeat the reasonable expectations of consumers. (*Patterson v. ITT Consumer Financial Corp.* (1993) 14 Cal.App.4th 1659, 1665 [recognizing arbitration is within the reasonable expectation of most consumers].) In evaluating the contract, the arbitration clause cannot fairly be described as hidden or inconspicuous within a prolix form.[2] There is no contention that it does not conform to state law, which requires at least 6-point type. (Civ. Code, § 2981.9 ["Every conditional sale contract subject to this chapter shall be in writing and, if printed, shall be printed in type no smaller than 6-point, and shall contain in a single document all of the agreements of the buyer and seller with respect to the total cost and the terms of payment for the motor vehicle, including any promissory notes or any other evidences of indebtedness"].) The contract itself is only one page with two sides. The form points out the existence of the arbitration clause on the front side in all capital letters, above the signature line for the buyer. The arbitration clause is also highlighted on the back in that it is outlined with a large box, by far the largest of the three boxed-in provisions on the page. The provision's boldface, all capital heading further highlights it. Surprise is also lacking in that Guzman does not contend he was denied an opportunity to read the contract before signing it.

---

[2] Because a copy of the contract is contained in the record, there is no meaningful factual dispute as to its placement, size, and depiction relative to the entire contract. Thus, we review the arbitration clause de novo.

## IV.    Substantive Unconscionability

Given the lack of surprise and assuming some amount of oppression, the arbitration clause contains, at most, a low degree of procedural unconscionability. Under the sliding scale articulated in *Armendariz*, a substantial degree of substantive unconscionability would be required to defeat enforcement of the clause. (*Armendariz, supra*, 24 Cal.4th at p. 114.) "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citations.] A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience." ' " (*Pinnacle, supra*, 55 Cal.4th at p. 246.)

Guzman argues the trial court's finding of substantive unconscionability should not be disturbed because Top Finance cannot attack the trial court's order by raising new factual and legal issues on appeal. In short, Guzman contends Top Finance has forfeited this issue as well. Not so. Top Finance addressed whether the arbitration agreement was unconscionable in its motion to compel arbitration, anticipating Guzman's opposition. That is sufficient for our purposes. To the extent Top Finance introduces facts outside of the record, we will disregard those facts.

Following argument and briefing, the trial court found substantive unconscionability was present because: 1) there was no provision requiring a written decision from the arbitrator; 2) there was no reference to any discovery rights; 3) there was no reference to the rules of the arbitral forum to be used; 4) the arbitration fee provisions were problematic; 5) there was no provision for an appeal to a three-judge panel; and 6) there was no mutuality of remedies. We conclude none of these provisions are sufficient to render the arbitration provision substantively unconscionable.

### A.  Absence of Provisions Requiring a Written Decision and Discovery Rights

The trial court found the absence of a provision requiring a written decision or one referencing discovery rights to be indicative of substantive unconscionability. The absence of these provisions is not overly harsh. Nothing in the arbitration clause precludes a written decision or discovery during the arbitration. Indeed, Code of Civil

11

Procedure section 1283.4 requires the award to be in writing. As a result, "the absence of express provisions requiring a written arbitration award and allowing discovery does not render the arbitration agreement unconscionable. Rather, those terms are implied as a matter of law as part of the agreement." (*Sanchez v. Western Pizza Enterprises, Inc.* (2009) 172 Cal.App.4th 154, 177, discussed on a different issue in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 366.)

### B. Rules of Arbitration

Under the arbitration clause, a buyer has the choice of conducting the arbitration with the National Arbitration Forum (NAF), the American Arbitration Association (AAA), or "any other organization that [buyer] may choose subject to [seller's] approval." The buyer is then directed to "get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website." The websites of the NAF and AAA are listed in the provision. The trial court found unconscionable the provision's failure to reference the rules of these arbitration organizations.

Under these circumstances, we fail to see how this is substantively unconscionable. The arbitration provision allows the buyer a choice of arbitral forums, including ones which are not listed. It further references the rules for the NAF and AAA by directing the buyer to those organizations' websites. Given the widespread availability of the internet, this contract term does not "shock the conscience," particularly when the buyer can choose a forum other than the NAF or AAA. Further, there is no indication the rules of the NAF or the AAA are themselves substantively unconscionable. The mere act of referencing the rules of an arbitral organization by directing a buyer to a website is insufficient to sustain a finding of substantive unconscionability. (*See Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 692 [permissible to incorporate by reference AAA rules].)

#### 1. Arbitration Fees

The trial court next took issue with the apportionment of fees between the parties. The arbitration clause provides that the seller will advance "[the buyer's] filing, administration, service or case management fee and [the buyer's] arbitrator or hearing fee

12

all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion." Each party is responsible for his or her own attorney, expert, and other fees, unless awarded by the arbitrator under applicable law.

The trial court found this cost provision to be unconscionable because "[a]ssuming *arguendo* that the cost of the arbitration exceeds $2,500, and the Plaintiff were to prevail, then Plaintiff would not necessarily be reimbursed for the arbitration costs exceeding that amount. There is no way of determining how much these arbitration fees would be. Moreover, there is no potential for a fee waiver under the terms of the arbitration provision, as is allowed for indigent plaintiffs for cases filed in court."

We do not agree that the provision is unduly harsh and one sided. In shifting the first $2,500 of costs to the seller, the provision helps buyers. That buyers may be responsible for their own costs above that amount does not seem unfair on its face. A "determination that arbitral fees in consumer cases are unreasonable should be made on a case-by-case basis, with the consumer carrying the burden of proof." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 97 (*Gutierrez*).) In *Gutierrez*, the plaintiffs presented substantial evidence in the trial court that the arbitration administrative fees they would be required to pay exceeded their ability to pay. (*Id.* at pp. 90-91.) They provided the court with a copy of the AAA rules in effect at the time the defendants moved to compel arbitration and a declaration from a AAA administrator describing how costs were to be calculated under those rules. In addition, the plaintiffs submitted a declaration setting forth their income, expenses, and savings to show that the required fees exceeded their ability to pay. (*Ibid.*) The plaintiffs' arbitration agreement provided no effective procedure for them to obtain a fee waiver or reduction. (*Id.* at p. 91.)

Here, there is no evidence, much less substantial evidence, that the arbitration fees would be prohibitively high. It is telling that the trial court noted "[t]here is no way of determining how much these arbitration fees would be." *Gutierrez* ably illustrates how to prove whether arbitration fees are unduly harsh or one sided. The trial court's comment suggests no evidence was presented on this issue.

13

As to the trial court's remark that there is no potential for a fee waiver for indigent parties, Code of Civil Procedure section 1284.3, subdivision (b)(1) requires all fees and costs charged upon a consumer by a private arbitration company, exclusive of arbitrator fees, to be waived for an indigent consumer. Given the arbitration provision's silence on this subject, subdivision (b) is implied as part of the contract. (*See Sanchez v. Western Pizza Enterprises, Inc.*, *supra,* 172 Cal.App.4th at p. 177.) We note also that the provision for initial round costs does not on its face violate Code of Civil Procedure section 1284.3, which prohibits nonprevailing consumers from being responsible for the opposing party's costs. (Code Civ. Proc., § 1284.3, subd. (a).) The contractual provision does not say that buyers will be responsible for the seller's costs, only the buyers' own costs.

2. Appeal to a Three-Member Panel

The trial court further found the provision allowing an appeal to a three-member panel to be problematic as there is nothing to indicate the rules of the NAF or AAA permitted such appeals. We decline to find this provision unconscionable for that reason. There is no indication the NAF or AAA does not permit such appeals. Further, the arbitration clause allows the parties to agree on an arbitral forum that is not the NAF or AAA. Thus, the parties are free to select one which does allow an appeal to a three-member panel. In any case, even if we assume this provision is substantively unconscionable, it alone does not render the provision unconscionable under the sliding scale articulated in *Armendariz.*

3. Mutuality of Remedies

The trial court devoted the majority of its ruling on this issue to a finding that the arbitration clause inadequately provided a mutuality of remedies. Under the arbitration clause, "[the buyer] and [the seller] retain any rights to self-help remedies, such as repossession. [The buyer] and [the seller] retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither [The buyer] nor [the seller] waive the right to arbitrate by using self-help remedies or filing suit."

14

The trial court found this provision unconscionable because: "It is totally unclear how Plaintiff would have a 'repossession' remedy here; it is likely that remedy would apply only to the Defendants. It also is unclear what other 'self-help' remedies Plaintiff (and other consumers signing the [contract]) would have, outside of the required arbitration." The trial court found this provision resulted in a lack of mutuality. That is, the provision exempts from arbitration the seller's most likely claims – repossession of vehicles for nonpayment of vehicle loans and small claims suits for nonpayment – while buyers' claims will always fall within the arbitration clause. We disagree.

To say this provision is unduly harsh and one sided because it exempts the self-help remedy of repossession is unpersuasive. Self-help remedies are, by definition, outside the judicial system. Top Finance's right to repossess derives from the sales contract, which provides that it may repossess a vehicle if the buyer defaults. Repossession does not require court action. It would defy logic to require the dealership to invoke the quasi-judicial process of arbitration to accomplish something that does not normally require the judicial process. In other words, there is nothing harsh or one sided about exempting repossession from arbitration when it is exempt from the judicial process as part of the status quo. Moreover, the notion that the buyer has no corresponding self-help remedies that would be exempt is not a consequence of the arbitration agreement. If there is a disparity in remedies, this is true whether the buyer is compelled to arbitration or is free to file suit in court.

The trial court found this provision analogous to the one in *Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638. *Abramson* is distinguishable. There, an employment agreement required the parties to arbitrate all claims, except those relating to trade secrets, confidential information and other intellectual property. (*Id.* at pp. 664-665.) Thus, it exempted from arbitration certain types of legal disputes requiring the judicial process, not extrajudicial, self-help remedies as in this case.

The exemption of small claims court disputes likewise does not seem unduly harsh or one sided. The provision is neutral and applies to any party's small claims dispute. Buyers could have a small claims dispute against the dealership – for example, for the

15

cost to repair a defective condition of the vehicle—and it would be exempt from arbitration. They benefit from this provision just as much as the dealership.

## DISPOSITION

The trial court's order denying Top Finance's motion to compel arbitration is reversed. Top Finance to recover its costs on appeal.

BIGELOW, P.J.

We concur:

RUBIN, J.

GRIMES, J.