LESLIE H. SOUTHWICK, Circuit Judge:
DoorDash is a California company that provides food-delivery service by using independent contractors it calls Dashers. A Dasher named Dewey Edwards brought suit against the company and sought conditional class certification. The district court, concluding there was an arbitration agreement with a valid delegation clause, granted DoorDash's motion to compel arbitration and dismissed Edwards's claims without addressing the class certification motion. We AFFIRM.
FACTUAL AND PROCEDURAL BACKGROUND
DoorDash customers in over two hundred cities can use a mobile application to order food from certain restaurants. A Dasher will deliver the order to the customer. DoorDash requires Dashers to sign an Independent Contractor Agreement ("ICA"). The ICA that Edwards signed contains this arbitration clause:
Contractor and Company agree that final and binding arbitration will be the exclusive means of resolving any disputes between Contractor and Company. Any such disputes shall be resolved by pursuant [sic] to the commercial rules of the American Arbitration Association (AAA) and such arbitration shall be held in Palo Alto, California. Judgment on any award rendered by the arbitrator may be entered in any court having jurisdiction over the award. Contractor and Company agree to bring any disputes in arbitration on an individual basis only and not as a class or other collective action basis. Accordingly, there will be no right or authority for any dispute to be brought, heard or arbitrated as a class or other collective action. This class and collective action waiver shall not be severable from this Agreement in any case in which the dispute is filed as such a class or collective action and a civil court of competent jurisdiction finds that this waiver is unenforceable. In such instance, the class or collective action must be litigated in a civil court of competent jurisdiction.
Edwards's ICA also includes this choice-of-law provision: "This Agreement shall be governed by and construed in accordance with the laws of the State of California without reference to the conflict-of-laws principles thereunder."
Edwards filed suit against DoorDash in the United States District Court for the Southern District of Texas, alleging Fair Labor Standards Act ("FLSA") violations. He also moved for conditional certification of a class of similarly situated individuals nationwide on the same day. In response, DoorDash filed both an emergency motion *742 to stay the conditional certification and a motion to compel individual arbitration and dismiss the suit. The magistrate judge who was referred the case partially granted DoorDash's motion, stating the arbitration issue would be considered first and the certification issue later. Edwards objected, but his objection was overruled.
After an evidentiary hearing and supplemental briefing, the magistrate judge issued a report and recommendation that the motion to dismiss should be granted and Edwards should be compelled to arbitrate his claims. The district court agreed. Edwards timely appealed.
DISCUSSION
On appeal, Edwards has two primary contentions. First, he argues the district court erred in deciding the arbitrability question before class certification. Second, he argues the district court erred in enforcing the arbitration agreement. Before addressing each argument, we consider our jurisdiction.
I. Whether this court has appellate jurisdiction
Edwards categorized his appeal as interlocutory even though the suit was dismissed in order for arbitration to proceed. Interlocutory appeals of orders compelling arbitration are prohibited. 9 U.S.C. § 16(b). What is permitted, though, is an appeal of a final decision regarding arbitration. Id. § 16(a)(3). A final decision is one that "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." Green Tree Servicing, L.L.C. v. Charles , 872 F.3d 637, 639 (5th Cir. 2017) (quoting Green Tree Fin. Corp.-Ala. v. Randolph , 531 U.S. 79, 86, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) ).
Here, the decision is final as to Edwards. All that remained for his claim was for the court to enter a final judgment. Although there were three other plaintiffs whose claims had not yet been dismissed, the final judgment rule applies to Edwards. We have exercised jurisdiction over an appeal when the order appealed from disposed of all of the appellants' claims, even though it did not resolve yet another plaintiff's claims. Barrett v. Atl. Richfield Co ., 95 F.3d 375, 379 (5th Cir. 1996). This is not an interlocutory appeal as Edwards argues, and instead this court has jurisdiction under Section 16(a)(3).
II. Whether the district court erred in compelling arbitration before considering the class certification
Edwards insists the district court erred in ruling on DoorDash's motion to dismiss and compel arbitration before it ruled on Edwards's motion to certify a class. The magistrate judge concluded that arbitrability was a threshold question and therefore ruled on that without considering the motion for conditional certification. DoorDash characterizes the decision as one relating to docket management and urges this court to review for an abuse of discretion. See Woodson v. Surgitek , Inc., 57 F.3d 1406, 1417 (5th Cir. 1995). Edwards, on the other hand, urges us to review the decision de novo. Because we would affirm under either standard, we need not discuss the proper standard of review.
The magistrate judge relied on a recent Fifth Circuit opinion to support the decision to rule on arbitrability without ruling on the conditional class certification. See Reyna v. Int'l Bank of Commerce , 839 F.3d 373, 376 (5th Cir. 2016). There we held that arbitrability claims should be resolved at the outset, even before considering conditional class certification. See ids="12175539" index="9" url="https://cite.case.law/f3d/839/373/#p376">id. We rejected the plaintiff's contention that "[i]n collective action suits brought under the FLSA, courts rule on first-stage *743 conditional certification and notice before ruling on the validity and enforceability of any purported arbitration agreement." Id. We distinguished Reyna from other cases in which district courts had certified a collective action before determining the arbitrability of the claims. Id. Those cases involved numerous factual distinctions, including the presence of additional opt-in plaintiffs. Id. at 376-77. Reyna was different because it involved "a defendant who promptly moved to compel the sole plaintiff to arbitrate his claim, pursuant to an arbitration agreement that undisputedly exist[ed]." Id. at 377.
The rationale for the holding in Reyna, though, was not limited to these factual differences. We also stated that arbitrability is a threshold question, as a contrary holding "would present a justiciability issue: a court could conditionally certify a collective action solely on the basis of a claim that the plaintiff was bound to arbitrate and was therefore barred from bringing it in court in the first place." Id. The court also stated that determining whether claims had to be arbitrated "prior to conditional certification more closely aligns with the 'national policy favoring arbitration' embodied by the FAA." Id. at 378 (quoting AT&T Mobility LLC v. Concepcion , 563 U.S. 333, 346, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) ).
Edwards's arguments against applying Reyna are limited to identifying factual differences. He says that his case has more than one named plaintiff, that no four-step grievance procedure exists, and that the validity of the arbitration agreement is disputed. What Edwards fails to do, however, is explain why those differences compel a different result. As in Reyna, we agree that "whether the named plaintiffs must arbitrate their claims should be decided well before the nationwide notification issue is reached." Id. at 377 (quoting Carter v. Countrywide Credit Indus., Inc. , 189 F.Supp.2d 606, 618 (N.D. Tex. 2002) ). We continue to hold that arbitrability is a "threshold question" to be determined "at the outset," a holding consistent with the "national policy favoring arbitration." Id. at 377-78 (citations omitted).
III. Whether the district court erred in enforcing the arbitration agreement
Edwards also argues that the district court erred in concluding that there is a valid arbitration agreement with a delegation clause-which is a written agreement sending disputes about arbitrability to an arbitrator-and, accordingly, finding that the FLSA claims were questions for the arbitrator. Edwards's central argument is that the arbitration agreement, as well as the ICA that contains it, are unenforceable. Specifically, Edwards argues the arbitration agreement is unconscionable; the class waiver contained within it is unenforceable; and the ICA containing the arbitration agreement is illusory and lacked consideration. DoorDash argues that once we conclude there is a delegation clause, our proper inquiry ends and the order granting the motion to compel arbitration and dismiss should be affirmed. We review that argument de novo . Banc One Acceptance Corp. v. Hill , 367 F.3d 426, 428 (5th Cir. 2004).
A court makes two determinations when deciding a motion to enforce an arbitration agreement. Klein v. Nabors Drilling USA L.P. , 710 F.3d 234, 236 (5th Cir. 2013). First, the court asks whether there is a valid agreement to arbitrate and, second, whether the current dispute falls within the scope of a valid agreement. Id. If the party seeking arbitration argues that there is a delegation clause, the court performs the first step-"an analysis of *744 contract formation"-"[b]ut the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause." Kubala v. Supreme Prod. Servs., Inc. , 830 F.3d 199, 202 (5th Cir. 2016). "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." Id.
In deciding whether the agreement to arbitrate exists, federal courts do not consider general challenges to the validity of the entire contract. Buckeye Check Cashing, Inc. v. Cardegna , 546 U.S. 440, 449, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). An arbitration agreement is severable from the underlying contract under Section Two of the Federal Arbitration Act. Rent-A-Center, W. , Inc. v. Jackson , 561 U.S. 63, 70, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010). As a result, a "party's challenge ... to the contract as a whole ... does not prevent a court from enforcing a specific agreement to arbitrate." Id. Following Buckeye and Rent-A-Center , we must distinguish arguments regarding the validity of the arbitration agreement from arguments regarding the validity of a contract as a whole. Lefoldt ex rel. Natchez Reg'l Med. Ctr. Liquidation Tr. v. Horne, L.L.P. , 853 F.3d 804, 814 (5th Cir. 2017), as revised (Apr. 12, 2017). Once the court determines there is a valid arbitration agreement, any remaining arguments that target the validity of the contract as a whole are questions for the arbitrator. Id. at 815. Importantly, arguments attacking an agreement's validity are to be distinguished from arguments that a contract was never formed. Id. at 810. We are permitted to consider arguments about contract formation. Id.
A comparable rule was applied by the Supreme Court when one party sought to enforce a delegation clause while the other argued the arbitration agreement as a whole was invalid. Rent-A-Center , 561 U.S. at 72, 130 S.Ct. 2772. The Court acknowledged that unlike Buckeye , "the underlying contract [was] itself an arbitration agreement." Id. That distinction was irrelevant. Id. The Court held that the delegation clause could be severed from the arbitration agreement that contained it in the same way that an arbitration provision could be severed from the larger agreement that contained it. Id. As a result, unless the party "challenged the delegation provision specifically," the Court "must treat it as valid ... and must enforce it ..., leaving any challenge to the validity of the Agreement as a whole [i.e, the arbitration agreement] for the arbitrator." Id.
In summary, we first look to see if an agreement to arbitrate was formed, then determine if it contains a delegation clause. If there is an agreement to arbitrate with a delegation clause, and absent a challenge to the delegation clause itself, we will consider that clause to be valid and compel arbitration. Challenges to the arbitration agreement as a whole are to be heard by the arbitrator. Arguments that an agreement to arbitrate was never formed, though, are to be heard by the court even where a delegation clause exists. See Kubala , 830 F.3d at 202. Since Kubala , we have reiterated that the first step of the test is limited to contract formation.[1]
*745 Edwards challenges the formation of the ICA and then the validity of the arbitration agreement and ICA as a whole. Following Kubala , we look first to whether there is an agreement to arbitrate and second to whether that agreement contains a valid delegation clause. Id.
We use state law to evaluate the underlying agreement. See Banc One Acceptance , 367 F.3d at 430. Here, the agreement between the plaintiffs and DoorDash included a choice-of-law provision specifying California law. Because the validity of that provision has not been called into question, we apply California law. See Overstreet v. Contigroup Cos., Inc. , 462 F.3d 409, 411 (5th Cir. 2006) ("[A]t least for the purposes of our analysis, the validity of the Georgia choice of law provision applicable to the parties' contract has not been called into question. Therefore, we see no reason to disregard the parties' agreement to apply Georgia law to their contract.").
Edwards argues that the contract is illusory because DoorDash never signed the agreement, never delivered it, and retained the ability to unilaterally modify it. We will address each contention.
First, it is certainly true that DoorDash never signed the contract. The district court concluded, though, that the arbitration agreement did not have to be signed by DoorDash to be enforceable. "[A]n arbitration agreement can be specifically enforced against the signing party regardless of whether the party seeking enforcement has also signed, provided that the party seeking enforcement has performed or offered to do so." Serafin v. Balco Props. Ltd., LLC , 235 Cal.App.4th 165, 185 Cal.Rptr.3d 151, 159 (2015) (quoting CAL. CIV. CODE § 3388 ). Here, as in Serafin , Edwards has not disputed that DoorDash performed its obligations under the ICA. See ion index="49" url="https://cite.case.law/citations/?q=185%20Cal.%20Rptr.%203d%20151">id. DoorDash's failure to sign did not prevent the formation of a contract.
Next, Edwards alleges that he never received his own personal copy of the contract, so it was never "delivered" to him. As a result, he argues that a contract was never formed. The district court found this argument without merit as Edwards cited no authority in support of it. On appeal, Edwards cites authority requiring mutual assent and acceptance, but he does not provide authority that requires both parties to retain a copy of the agreement. DoorDash argues that when Edwards signed and returned the contract, it was "delivered." "Where an agreement is retained by either party with the consent of the other, it must be considered as delivered, if both understand that it has been executed and is in operation." Giambroni v. Jurgensen (In re Estate of Klauenberg ), 32 Cal.App.3d 1067, 108 Cal.Rptr. 669, 671 (1973). This argument also is without merit.
Edwards also contends that DoorDash retained the power to modify the arbitration agreement unilaterally. California courts have "concluded a binding arbitration agreement exists even though the employer retains the right to modify its personnel policies." Serafin, 185 Cal.Rptr.3d at 158. "Because California law prevents a party from exercising a discretionary power, such as the power to modify, in bad faith or in a way that deprives the other party of the benefits of the agreement, [a party's] right to modify its 'policies or practices at any time' does not render the arbitration agreement illusory." Id. at 158-59.
Edwards concedes that the ICA "can only be modified in an express written agreement by Contractor and an authorized officer of Company." Nonetheless, Edwards contends DoorDash has unilaterally modified the agreement because the company has made legal arguments that conflict *746 with the ICA and because a new version of the ICA was implemented after the litigation began. Although Edwards cites Totten v. Kellogg Brown & Root, LLC , 152 F.Supp.3d 1243, 1253 (C.D. Cal. 2016), that case was specifically addressing instances in which the employer was attempting to modify the arbitration agreement as applied to claims already in existence. That is not the case here. Because "[t]he arbitration clause is supported by mutual promises to arbitrate," we reject this argument.
Edwards also argues that the agreement is unconscionable. Unconscionability is not a contract formation issue under California law. A California intermediate court held that an argument that an entire agreement is unconscionable is a "contention [that] must be presented to the arbitrator." Higgins v. Superior Court , 140 Cal.App.4th 1238, 45 Cal.Rptr.3d 293, 301 (2006), as modified (July 10, 2006). If the question of an underlying agreement's validity is for the arbitrator, we can infer that California courts consider the question to relate to the contract's validity but not its formation. Because Edwards's unconscionability arguments do not relate to whether an agreement to arbitrate was formed, we do not consider them during the first step of the Kubala analysis.
We now turn to step two of the Kubula framework: the question of whether there is an enforceable delegation clause. DoorDash identifies a delegation clause through the incorporation of the American Arbitration Association ("AAA") rules in the arbitration agreement. Edwards concedes the arbitration provision incorporates a delegation clause.
Under Rule 7 of the AAA rules, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." We have previously held "that express incorporation of the same AAA Rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp. , 748 F.3d 249, 262-63 (5th Cir. 2014) (citing Petrofac, Inc. v. DynMcDermott Petroleum Operations Co. , 687 F.3d 671, 675 (5th Cir. 2012) ).
Here, the ICA contained an agreement to arbitrate, which, through incorporation of the AAA rules, contained an agreement to delegate issues of arbitrability to the arbitrator. Because DoorDash sought to compel arbitration on the basis of that delegation clause, we must treat it as valid absent any specific challenge to the delegation clause by Edwards. Edwards's unconscionability arguments target the ICA as a whole and the arbitration agreement, but he fails to challenge the delegation clause. Therefore, we treat the delegation clause as valid. Edwards's remaining arguments regarding the validity of the arbitration agreement or the ICA as a whole should be addressed by the arbitrator.
AFFIRMED.

See, e.g., Archer & White Sales, Inc. v. Henry Schein, Inc. , 878 F.3d 488, 492-93 (5th Cir. 2017) ; IQ Prods. Co. v. WD-40 Co. , 871 F.3d 344, 348-49 (5th Cir. 2017) ; Brittania-U Nigeria, Ltd. v. Chevron USA, Inc. , 866 F.3d 709, 713-14 (5th Cir. 2017). This limit was not articulated in Reyna , 839 F.3d at 378-79, but there, the first step-whether an agreement to arbitrate was formed-was undisputed.