# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-20570

United States Court of Appeals
Fifth Circuit

**FILED**
September 4, 2019

Lyle W. Cayce
Clerk

JESUS MARAVILLA,

      Plaintiff - Appellant

v.

GRUMA CORPORATION, doing business as Mission Tortillas,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-1309

Before KING, ELROD, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

I.

Plaintiff-Appellant Jesus Maravilla ("Maravilla") and Defendant-Appellee Gruma Corporation ("Gruma"), doing business as Mission Tortillas, entered into an agreement ("the Agreement") that Maravilla would sell and distribute food products to Gruma's retail customers within a specified area in Texas. The Agreement stated that Maravilla "agrees that he . . . is not an employee of [Gruma] for any purpose, but is an Independent sales and

---

      * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20570

distribution contractor." The parties also mutually disclaimed and waived the right to pursue class action claims against one another.

Additionally, the Agreement includes the following arbitration provision: "[A]ny and all other claims and causes of action arising out of or relating to this Agreement (including, without limitation, matters relating to . . . enforceability of all or any part of this Agreement . . . ) shall be resolved by arbitration through JAMS/Endispute ("JAMS")."

The Agreement further explains that all arbitration proceedings "shall proceed pursuant to JAMS Streamlined Arbitrations Rules and Procedures." JAMS Streamlined Rule 8 provides:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation, or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.[1]

On April 26, 2018, Maravilla filed a purported collective Fair Labor Standards Act action against Gruma, along with a motion for class certification. On May 16, 2018, Gruma filed its first motion to dismiss, alternatively a motion to compel arbitration, as well as a motion to stay class certification proceedings. Maravilla then filed an amended complaint that added collective action allegations, among other allegations, and a response to Gruma's first motion to dismiss. Maravilla argued in his response that the Agreement containing the arbitration provision was invalid and unenforceable

---

[1] JAMS Streamlined Rules became effective July 1, 2014. (https://www.jamsadr.com/rules-streamlined-arbitration/). The Distributor Agreement was entered into and effective as of July 31, 2014.

because he is "not proficient in written English" and therefore the contract was unconscionable.

The same day that Maravilla filed his response, Gruma filed a second motion to dismiss seeking dismissal of Maravilla's claims and compelling arbitration.[2] Gruma notes in its appellate brief that Maravilla did not file a separate response to Gruma's second motion to dismiss. However, the district court concluded that because Gruma's arguments regarding arbitration were "virtually identical" in both its first and second motion to dismiss, Maravilla's response applied with equal force to Gruma's second motion to dismiss.

On July 26, 2018, the district court granted Gruma's second motion to dismiss and compelled Maravilla to arbitrate the dispute individually.[3] Maravilla timely appealed, challenging the district court's dismissal of his claims in favor of arbitration. On appeal, Maravilla contends that the district court erred in its determination that the arbitration clause was enforceable.[4] Maravilla maintains that the Agreement was unconscionable (and thus unenforceable) because it was in English and he "was not proficient in written English."

## II.

This court reviews de novo a district court's ruling on a motion to compel arbitration. *Kubala v. Supreme Prod. Servs.*, 830 F.3d 199, 201 (5th Cir. 2016);

---

[2] Gruma also filed a "Motion to Stay Conditional Certification Proceedings in Light of Plaintiff's Agreement to Individual Arbitration," which was granted by the district court on July 17, 2018. Thus, Maravilla is the sole appellant in this appeal.

[3] This is a final appealable order. *See, e.g., Westlake Styrene Corp. v. P.M.I. Trading, Ltd.*, 71 F. App'x 442, 442 (5th Cir. 2003).

[4] Maravilla does not challenge on appeal the district court's determination that the Agreement contained an enforceable class action waiver. Therefore, he has abandoned this claim on appeal. *See* FED. R. APP. P. 28(a)(8)(A); *United States v. Cothran*, 302 F.3d 279, 286 n.7 (5th Cir. 2002).

No. 18-20570

*see also Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (de novo standard applies when a motion to compel part of motion to dismiss).

### III.

"The [Federal Arbitration Act] reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Courts must enforce arbitration agreements according to their terms. "Like other contracts, however, [arbitration agreements] may be invalidated by 'generally applicable contract defenses . . . .'" *Rent-A-Ctr.*, 561 U.S. at 68 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Both parties agree that Texas law applies.[5]

Courts apply a two-step analysis to determine whether parties should be compelled to arbitrate a dispute. The first step focuses only on contract formation: the court must determine "whether the parties entered into *any arbitration agreement at all*." *Kubala*, 830 F.3d at 201. In conducting this initial inquiry, the court distinguishes between "'validity' or 'enforceability' challenges and 'formation' or 'existence' challenges." *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018).

The second step involves a limited inquiry if, as here, the agreement purportedly contains a delegation clause[6]: "whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the

---

[5] The "Governing Law" section of the Agreement states: "This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. The Federal Arbitration Act, 9 U.S.C. § 1 et seq. shall also apply as needed to uphold the validity or enforceability of the arbitration provisions of this Agreement."

[6] A delegation clause is "an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Ctr.*, 561 U.S. at 68. "Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator." *Kubala*, 830 F.3d at 202.

arbitrator decide whether a given claim must be arbitrated." *Kubala*, 830 F.3d at 202. If the agreement contains a delegation clause, a "motion to compel arbitration should be granted in almost all cases." *Id.*; *see also Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018) ("If there is an agreement to arbitrate with a delegation clause, and absent a challenge to the delegation clause itself, we will consider that clause to be valid and compel arbitration.").

We proceed to the first step. Maravilla argues that the Agreement is invalid because it was written in English, in which he claims he is not proficient. Because he could not understand the Agreement, he asserts that the Agreement was unconscionable. The initial determinative issue is whether Maravilla's unconscionability argument is a challenge to contract enforcement, as the district court reasoned, or contract formation.

If his argument is a challenge to contract enforcement or validity, the argument is properly heard by the arbitrator. *Edwards*, 888 F.3d at 744. If it is a question of contract formation, the court may hear it. "In deciding whether the agreement to arbitrate exists, federal courts do not consider general challenges to the validity of the entire contract . . . [but] [w]e are permitted to consider arguments about contract formation." *Id.* (citations omitted). Additionally, the court may hear a direct challenge to the arbitration clause specifically. *Rent-A-Ctr.*, 561 U.S. at 71 ("[W]e nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene.").

Under Texas law, "a contract signatory's inability to understand English is not a defense to contract formation." *Doskocil Mfg. Co. v. Nguyen*, No. 02-16-00382, 2017 WL 2806322, at *5 (Tex. App. June 29, 2017) (collecting cases); *accord In re Ledet*, No. 04-04-00411, 2004 WL 2945699, at *5 (Tex. App. Dec. 22, 2004) (citing *Vera v. N. Star Dodge Sales, Inc.*, 989 S.W.2d 13, 17–18 (Tex.

App. 1998)).[7] Therefore, it is a validity challenge under an unconscionability analysis. *See Estate of Benitez v. Sears, Roebuck & Co.*, No. 3:13-CV-0468, 2013 WL 4223875, at *3 n.3 (N.D. Tex. Aug. 14, 2013) (collecting cases); *see also In re Turner Bros. Trucking Co.*, 8 S.W.3d 370, 376 (Tex. App. 1999) (explaining that under Texas law, contracts which are unconscionable are invalid and unenforceable.). Unconscionability arguments "represent affirmative defenses against the enforcement of a presumptively formed contract." *Ridge Natural Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 129 (Tex. App. 2008) (citing *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001)).

"[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006). Despite his attempts to narrowly frame his arguments to challenge only the arbitration agreement, Maravilla's contention of not being able to read the contract pertains to the validity of the contract as a whole. Therefore, it is a decision for the arbitrator. *See Primerica Life Ins. v. Brown*, 304 F.3d 469, 472 (5th Cir. 2002) ("[U]nless a defense relates specifically to the arbitration agreement, it must be submitted to the arbitrator as part of the underlying dispute."); *Ridge Natural Res.*, 564 S.W.3d at 131 (declining to consider procedural unconscionability arguments that go to the container contract as a whole, concluding that those are matters for the arbitrator). In fact, Maravilla's affidavit specifically references the entire employment contract: "I am fluent and proficient in the Spanish language. Gruma neither presented me with an employment agreement nor an arbitration clause in a language that I could understand." On appeal, he maintains that the district court erred "by ignoring evidence in

---

[7] Instead, it is well-established that "[a]bsent proof of mental incapacity, a person who signs a contract is presumed to have read and understood the contract, unless she was prevented from doing so by trick or artifice." *Doskocil*, 2017 WL 2806322, at *5.

the record that demonstrates that Gruma's employment agreement is not binding, and thus the arbitration clause is void." Because Maravilla's unconscionability argument does not relate to whether an agreement to arbitrate was formed and because it calls into question the validity of the contract as a whole, we proceed to the next step. *See Edwards*, 888 F.3d at 746.

Turning to step two, the court must determine whether the Agreement contains a delegation clause that "clearly and unmistakably" provides for the validity and enforceability of the arbitration agreement to be decided by the arbitrator. *See Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012). Importantly, Maravilla failed to specifically dispute that the Agreement contains a valid delegation clause on appeal or before the district court. The arbitration clause explicitly delegates to the arbitrator "any and all claims and causes of action arising out of or relating to this Agreement [] including, without limitation, matters relating to . . . enforceability of all or any part of this Agreement." The broad and "unqualified 'any dispute' language in the [arbitration clause] confirms that the delegation of arbitrability was intended to apply to *all* disputes between the parties." *Richland Equip. Co. v. Deere & Co.*, 745 F. App'x 521, 525 (5th Cir. 2018).

Additionally, the adoption of specific arbitration rules—such as JAMS— shows that a party knowingly intended to arbitrate gateway issues of arbitrability. *See Rent-A-Ctr.*, 561 U.S. at 79 (stating that parties' intent can be found where "delegation is clear and unmistakable"); *see also Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016) (noting that the parties had "expressly adopted" the JAMS rules in their agreement, "present[ing] clear and unmistakable evidence that [they] agreed to arbitrate arbitrability").

7

No. 18-20570

IV.

Because Maravilla's unconscionability argument targets the Agreement as a whole and because he fails to specifically challenge the delegation clause, we treat the delegation clause as valid. Therefore, Maravilla's arguments regarding the validity of the Agreement, which includes the arbitration provision, must be submitted to the arbitrator. *See Edwards*, 888 F.3d at 746. We AFFIRM the district court's order compelling arbitration.