This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38207**

**PETER M. PENA, Executor of the Estate of DON LAURITSEN, Deceased,**

Plaintiff-Appellee,

v.

**ST. THERESA HEALTHCARE AND REHABILITATION CENTER n/k/a UPTOWN REHABILITATION CENTER; GENESIS HEALTHCARE, INC.; and GENESIS HEALTHCARE, LLC,**

Defendants-Appellants,

and

**EXPRESS MEDICAL TRANSPORTERS, INC.; IPC HEALTHCARE, INC.; MAHMOOD ZAMANIAN, M.D.; TIMOTHY D. KRENIK, P.A.; JOHN DOES 1-50; and EXPRESS TRANSPORTATION OF NEW MEXICO, LLC,**

Defendants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Nancy J. Franchini, District Judge**

Buckingham Barrera Law Firm
Rick Barrera
B. Kent Buckingham
Albuquerque, NM

for Appellee

Quintairos, Prieto, Wood & Boyer, P.A.
Frank Alvarez
Jo Beth Drake

Dallas, TX

for Appellants

**MEMORANDUM OPINION**

**IVES, Judge.**

**{1}** Upon Plaintiff Don Lauritsen's[1] 2011 admission to a nursing care facility operated by Defendants,[2] the parties entered into an arbitration agreement. Plaintiff later departed the facility but was readmitted in 2015 as the result of a fall. After Plaintiff's readmission, he sued Defendants, alleging that they had caused him serious harm by inadequately diagnosing injuries he suffered as the result of the fall. Relying on their 2011 arbitration agreement with Plaintiff, Defendants sought to compel arbitration, but the district court refused, reasoning that neither the 2011 arbitration agreement nor a delegation clause within the agreement "c[a]me into effect" for claims arising after Plaintiff's 2015 readmission because "there was a break in the stay at the facility." We hold that the district court erred in denying Defendants' motion to compel arbitration on the threshold issue of whether Plaintiff's claims against them must be arbitrated and therefore reverse.

**{2}** We begin by clarifying the question presented to us in this appeal. This case does not present the question of whether an arbitration agreement between the parties exists because it is undisputed that the parties entered into an arbitration agreement upon Plaintiff's 2011 admission into Defendants' facility. Whether *that* arbitration agreement applies to claims arising from events occurring after Plaintiff's departure and subsequent readmission depends on the language of the agreement, *Christmas v. Cimarron Realty Co.*, 1982-NMSC-079, ¶ 7, 98 N.M. 330, 648 P.2d 788, and the district court in essence concluded that the language of the 2011 agreement did not require arbitration of post-readmission claims in determining that the agreement "does not come into effect" for the time period following Plaintiff's readmission.[3] The question presented

---

1While this appeal was pending, Mr. Lauritsen passed away, and the executor of his estate, Peter M. Pena, was substituted as Plaintiff. However, for simplicity and consistency, we use the term Plaintiff to refer to Mr. Lauritsen throughout this opinion.

2As indicated in the caption, certain defendants are not parties to this appeal. For simplicity, we use the term Defendants to refer to Defendants-Appellants throughout this opinion.

3The basis for the district court's ruling is not perfectly clear. The district court's oral remarks at the hearing on Defendants' motion to compel arbitration could be interpreted as indicating that the premise of its ruling is that Defendants failed to show *the existence* of an arbitration agreement between the parties. If the district court did, in fact, rely on that premise, it did so in error because, as noted above, the parties entered into an arbitration agreement.

Unlike the dissent, we are not persuaded that we should reverse under the reasoning of *Cottrell v. Holtzberg*, 255 A.3d 1209 (N.J. Super. Ct. App. Div. 2021). In that case, as in this one, a nursing facility resident entered into an arbitration agreement containing a delegation clause upon initial admission to the defendant's facility, and the resident was later readmitted without signing a new arbitration agreement. *Id.* at 1212. In *Cottrell*, the court concluded that "there was no agreement by [the plaintiff] to arbitrate issues arising from the [second] admission[,]" first, because the resident "did not sign a new agreement upon her [re]admission[,]" and, second, because "the [initial agreement] did not apply to subsequent admissions" "[b]y its express language." *Id.* at 1216. But the court's first point—that the plaintiff had not signed a new

here is whether the district court even had the authority to interpret the agreement and decide whether its language required arbitration of post-readmission claims.

**{3}** We agree with Defendants that the district court lacked that authority because the arbitration agreement at issue contains a delegation clause committing gateway issues of contract interpretation to an arbitrator. Accordingly, we hold that an arbitrator must decide whether post-admission claims must be resolved through arbitration.

**{4}** The Federal Arbitration Act (FAA) provides in pertinent part that written arbitration provisions in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether . . . their [arbitration] agreement covers a particular controversy." *Henry Schein, Inc.*, 139 S. Ct. at 529 (internal quotation marks and citation omitted). Such an agreement displaces the "general rule . . . that the arbitrability of a particular dispute is a threshold issue to be decided by the district court." *Hunt v. Rio at Rust Centre, LLC*, 2021-NMCA-043, ¶ 13, 495 P.3d 634 (internal quotation marks and citation omitted). And, because parties might "reasonably . . . th[ink] a judge, not an arbitrator, would decide" the "rather arcane" question of "who (primarily) should decide arbitrability[,]" *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995) (internal quotation marks omitted), courts will find that the parties have agreed to arbitrate a gateway issue only if "the parties clearly and unmistakably provide" as much. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). But, at the end of the day, "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent [arbitration] agreement . . . , and the FAA operates on this additional arbitration agreement just as it does on any other[,]" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010): by mandating that "courts . . . place [it] on an equal footing with other contracts . . . and enforce [it] according to [its] terms[.]" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted).

---

arbitration agreement upon readmission—mattered only if the court was correct in concluding that the parties' initial arbitration agreement did not apply to claims arising after the resident's readmission. It is unclear from the opinion whether that conclusion was based on the court's interpretation of the underlying arbitration agreement or on its reading of the delegation clause contained in that agreement. Insofar as the *Cottrell* court's analysis rested on an interpretation of the delegation clause itself, we think the court gave a questionable construction to the contractual language before it. *See id.* at 1216 (reasoning that the parties' explicit agreement to arbitrate disputes "involv[ing] 'interpretation . . . of [the initial arbitration agreement] . . . arising in the future'" meant "a claim about the [initial] admission asserted in the future" without explaining why that language did not encompass disputes about whether the initial agreement applied to post-readmission claims). And even if we agreed with that construction, we see nothing in the delegation clause at issue here to similarly limit its sweeping language. Alternatively, to the extent that the court's conclusion was based on its interpretation of the parties' underlying arbitration agreement, the court went astray because the parties had agreed to arbitrate "disputes regarding interpretation" of the underlying agreement, *id.* at 1212, and arbitration of such disputes was thus required even if one party urged an interpretation that the court thought "wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019).

**{5}** "[W]e apply New Mexico contract law in . . . interpret[ing] and constru[ing] . . . the arbitration agreement." *Hunt*, 2021-NMCA-043, ¶ 12 (alterations, internal quotation marks, and citation omitted). Accordingly, "[w]e consider the plain language of the relevant provisions," which is "objective evidence of the parties' mutual expression of assent." *H-B-S P'ship v. Aircoa Hosp. Servs., Inc.*, 2005-NMCA-068, ¶ 19, 137 N.M. 626, 114 P.3d 306. In this case, the pertinent language of the parties' agreement provides:

> By entering into this Arbitration Agreement, Resident and Facility understand and agree that any controversy or claim arising out of or relating in any way, directly or indirectly, to one or more Disputes, including the enforceability of this Arbitration Agreement, shall be settled by arbitration.

Elsewhere, the agreement defines "Disputes" as a term embracing, among other things, "all disputed claims that the Facility and Resident may have against each other associated with this Arbitration Agreement[.]"[4]

**{6}** We conclude that these provisions clearly and unmistakably delegate threshold questions of contract interpretation to an arbitrator. The delegation clause commits to arbitration "*any* controversy or claim arising out of or relating *in any way*, directly or indirectly," to "*all* disputed claims . . . associated with [the] Arbitration Agreement[.]" (Emphases added.) We need not consider whether this sweeping but vague language, standing alone, would constitute clear and unmistakable evidence of an agreement to arbitrate any particular gateway issues because the language does not stand alone. The delegation clause explicitly identifies the "enforceability of [the] Arbitration Agreement" as an example of a "controversy or claim arising out of or relating" to a "Dispute" (or, alternatively, as a "Dispute" in its own right), and the enforceability of the arbitration agreement is undeniably a "threshold question[] of arbitrability." *Hunt*, 2021-NMCA-043, ¶ 15 (emphasis omitted). The delegation provision thus unambiguously indicates that the parties considered *one* threshold issue of arbitrability to be embraced by its broad language. And because enforceability is either a Dispute or a controversy or claim, and the parties agreed to arbitrate "any"—i.e., all—controversies or claims arising out of or relating to a Dispute without indicating any exceptions to this requirement, it would be unreasonable to conclude that the parties intended the delegation clause to apply to threshold enforceability issues but not gateway questions of interpretation. The law requires "clear and unmistakable evidence," *Kaplan*, 514 U.S. at 944 (alterations, internal quotation marks, and citation omitted), of an agreement to arbitrate a threshold issue, not magic language mentioning a specific gateway issue by name, and we conclude that this standard was met here. Accordingly, we hold that the district court

---

[4]The agreement provides that arbitration will be "in accordance with the New Mexico Uniform Arbitration Act[ (NMUAA)]." In contending that the delegation clause requires arbitration of threshold issues, Defendants rely on case law interpreting the FAA. Plaintiff did not argue in the district court and does not argue on appeal that the NMUAA, rather than the FAA, controls or that, if the NMUAA does control, the delegation clause should be analyzed differently under the NMUAA than under the FAA. We therefore decline to address these questions.

erred in denying Defendants' motion to compel arbitration on the gateway issue of whether the parties' 2011 arbitration agreement requires arbitration of Plaintiff's claim, which arose after his departure from and readmission to Defendants' facility.

**CONCLUSION**

**{7}** We reverse and remand with instructions for the district court to enter an order compelling arbitration as to whether the parties' 2011 arbitration agreement requires arbitration of Plaintiff's claim.

**{8}** **IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**I CONCUR:**

**GERALD E. BACA, Judge**

**MEGAN P. DUFFY, Judge (dissenting).**

**DUFFY, Judge, dissenting.**

**{9}** "A court makes two determinations when deciding a motion to enforce an arbitration agreement. First, the court asks whether there is a valid agreement to arbitrate and, second, whether the current dispute falls within the scope of a valid agreement." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 743 (5th Cir. 2018) (citation omitted). If, as here, the party seeking to compel arbitration argues that there is a delegation clause, "the court performs the first step—an analysis of contract formation—but the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause." *Id.* (alteration, internal quotation marks, and citation omitted); *see also Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1105 (10th Cir. 2020) ("The issue of whether an arbitration agreement was formed between the parties must always be decided by a court, regardless of whether the alleged agreement contained a delegation clause or whether one of the parties specifically challenged such a clause.").

**{10}** In this case, the district court properly undertook the first step and concluded that there was no agreement to arbitrate for Mr. Lauritsen's 2015 admission to Defendants' facility. Notably, the record contains no documents related to that admission. I would have affirmed the district court's conclusion for substantially the same reasons articulated in *Cottrell*, 255 A.3d at 1215 (stating that the proper analysis commences with the second admission, not the delegation clause from the prior admission agreement).

**{11}** For these reasons, I respectfully dissent from the majority opinion.

**MEGAN P. DUFFY, Judge**