# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 10, 2022

Lyle W. Cayce
Clerk

No. 21-20548

Anadarko E&P Onshore, L.L.C.,

*Plaintiff—Appellant*,

*versus*

California Union Insurance Company;
Century Indemnity Company, solely as successor-in-interest to CIGNA Specialty Insurance Company, formerly known as California Union Insurance Company,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-1743

Before Jones, Southwick, and Oldham, *Circuit Judges*.

Per Curiam:*

This insurance case poses questions about removal, contract interpretation, and arbitration. We have carefully considered the appeal in

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

light of the briefs, oral argument, and the record and AFFIRM for essentially the reasons stated by the district court.

California Union Insurance Company, now Century Indemnity Company, ("Insurers") issued excess umbrella liability insurance policies to the corporate predecessor of Anadarko E&P Onshore LLC. The first policy was effective from April 1, 1979 to April 1, 1980 while the second had effect from April 1, 1980 to April 1, 1981. Both provide that "[i]f limits of liability of the underlying insurance are exhausted because of . . . property damage, . . . [the Insurers] have the right and duty to defend any suit against the Insured seeking damages on account of such . . . property damage." They also contain a service-of-suit provision that states:

> [I]n the event of the failure of [the Insurers] to pay any amount claimed to be due hereunder, [the Insurers] hereon, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction . . . .

In 2007, Anadarko and its Insurers entered into a settlement agreement that, in relevant part, covered "private action claims" involving "property damage, bodily injury, sickness, disease, or death resulting therefrom allegedly caused from exposure to environmental conditions stemming from Anadarko's facilities, operations, or products prior to January 1, 1986." With respect to these claims, the Insurers agreed to "pay Anadarko a portion of . . . future defense costs that [it] incurr[ed] following the effective date of [the] agreement." Future defense costs are defined, without limitation, as "the reasonable and necessary fees, costs, and expenses incurred in the investigation and defense of . . . private action claims." Critically, the parties also agreed that:

No. 21-20548

> Any controversy or claim between [them] relating to the payment, non-payment, or reimbursement by either party of any . . . future defense costs . . . , and any controversy or claim concerning this agreement, shall be settled by arbitration . . . ."

The settlement and defense costs agreements "contain the entire agreement between the parties as respects their subject matter."

Ten years later, the parties entered into an addendum to the settlement agreement to resolve Anadarko's claims for defense costs associated with the "Louisiana Parish lawsuits," which alleged that Anadarko caused property damage during the policy periods. The 2017 addendum "incorporated [the 2007 agreement's terms] by reference, except as otherwise provided . . . ." Anadarko did not, however, "release or discharge [its Insurers] from any claim, demand, cause of action, damage, or liability . . . relating to or arising out of any defense costs or indemnity costs relating to the Louisiana Parish Lawsuits not expressly included in the definition of past defense costs provided in this addendum[.]" Thus, post-September 2016 defense costs lie outside the addendum's scope.

In 2021, Anadarko brought this action against its Insurers in Texas state court, asserting that they breached the policies and violated the Texas Insurance Code by failing to "pay any defense expenses incurred by Anadarko from September 2016 forward[.]" The Insurers removed the action before moving to dismiss and compel arbitration. Anadarko then moved to remand.

The district court denied the motion to remand, granted the motion to compel, and dismissed the action without prejudice. In doing so, the court made three dispositive determinations.[1] We review each *de novo*. *See*

---

[1] Aside from the merits, the district court ruled that Anadarko had standing to bring its breach of contract claim and that diversity jurisdiction exists because the parties are

*Halliburton Energy Servs. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 529-30 (5th Cir. 2019).

First, the district court found that the 2007 agreement superseded the original policies. We agree. Anadarko presently seeks "future defense costs" as defined by the 2007 agreement because they are associated with "private action claims" pursuing redress for alleged property damage. The 2007 agreement therefore mandates arbitration. The policies' service of suit provisions, by contrast, broadly allow Anadarko to select any forum to adjudicate this dispute. These provisions point in opposite directions. Such an irreconcilable inconsistency gives rise to "a presumption that the second superseded the first." *IP Petroleum Co., Inc. v. Wevanco Energy, L.L.C.*, 116 S.W.3d 888, 899 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (citing *Willeke v. Bailey*, 189 S.W.2d 477, 479 (Tex. 1945)). And Anadarko has not overcome that presumption, so Anadarko cannot rely on the service-of-suit clause to contest removal. Further, the 2007 agreement's merger clause only reinforces its eclipse of the policies in this regard. *See Rieder v. Woods*, 603 S.W.3d 86, 94 (Tex. 2020) (quoting *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000)).

Second, the district court ruled that the 2017 addendum to the 2007 agreement did not supersede the latter's arbitration clause. That is correct. The 2017 addendum expressly incorporated by reference all the defined terms from the 2007 agreement except as otherwise provided. As to the arbitration clause, it did not affect the application of the 2007 agreement to post-September 2016 defense costs incurred by Anadarko. Such costs are at issue here and remain subject to the 2007 agreement's arbitration clause.

---

completely diverse. No party challenges these rulings on appeal, and after supplemental briefing we conclude that this controversy is justiciable in federal court.

Moreover, any attempt by Anadarko to choose the forum for future defense cost disputes under the 2017 addendum was a nullity because it had already relinquished that right in 2007 and incorporated that relinquishment into the addendum.

Third, the district court found that the 2007 agreement's arbitration clause was valid and that this dispute fell within its scope. It was right to do so. A two-step analysis determines whether to compel parties to arbitrate. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "First, the court asks whether there is a valid agreement to arbitrate and, second, whether the current dispute falls within the scope of a valid agreement." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 743 (5th Cir. 2018) (citation omitted). Anadarko does not dispute that it entered a valid agreement to arbitrate with its Insurers. And, for reasons already explained, this dispute falls within the scope of the 2007 agreement. That determination is further warranted because "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941 (1983).

AFFIRMED.